[No. 17188. Department Two. February 1, 1923.]

WILLIAM A. GREENE, as Trustee etc., Respondent, v. RAY LEVINSON et al., Appellants.[1]

FRAUDULENT CONVEYANCES (20, 55)—INSOLVENCY AND INTENT—TRANSACTIONS BETWEEN HUSBAND AND WIFE—SUBSEQUENT CREDITORS. Subsequent creditors cannot complain that a gift of shares of stock to a wife was fraudulent, where the husband was perfectly solvent at the time it was made, his then creditors have long since been paid in full, and the property has since been kept separate and distinct from community property.

BANKRUPTCY (4)—PROPERTY VESTING IN TRUSTEE—SEPARATE OR COMMUNITY FUNDS. A fund accumulated by a bankrupt after making a gift of stock in a corporation to his wife, and secreted in her possession, passes to the trustee in bankruptcy, either as the separate or community property of the bankrupt.

HUSBAND AND WIFE (57)—COMMUNITY PROPERTY—EARNINGS OF HUSBAND—PROFITS AND EARNINGS OF SEPARATE PROPERTY—EVIDENCE—SUFFICIENCY. Where a husband made a gift of corporate stock to a wife and the subsequent activities and financial success of the corporation was in no degree due to the earnings of its capital, but solely from the daring and keen business ability of the husband in speculative ventures, such earnings belong to the community; since

[1]Reported in 212 Pac. 569.

the cloak of a corporate name cannot be used to make them separate property.

SAME (20)—WIFE'S SEPARATE PROPERTY—PROCEEDS OF SEPARATE PROPERTY. An increase in the capital stock of a company, paid for by a transfer of a married woman's home, which was a gift to her, becomes her separate property.

BANKRUPTCY (18)—ACTIONS BY TRUSTEE—JUDGMENT. Where, in an action by a trustee in bankruptcy to recover the assets of a holding corporation, all the stock of which was owned by the bankrupt's wife, it appears that such assets were principally community property resulting from subsequent earnings of the husband, secreted and in possession of the wife, the judgment to be entered against the wife should be limited to the funds in her possession, and against the corporation for the community property held by it, and the corporate stock should be awarded to the wife.

Appeal from judgments of the superior court for King county, Ronald, J., entered March 28, 1922, upon findings in favor of the plaintiff, in an action by a trustee to subject property to the estate of a bankrupt, tried to the court. Reversed.

*Walter B. Allen, Walter S. Fulton,* and *Chadwick, McMicken, Ramsey & Rupp,* for appellants.

*McClure & McClure, Greene & Henry,* and *Max Hardman,* for respondent.

TOLMAN, J.—This is an appeal from a personal judgment against appellant Ray Levinson in the sum of $137,489.67, and against the Manhattan Investment Company, ordering it to transfer and deliver to respondent 299 shares of its capital stock out of a total of 300 authorized shares, and, in the event of its refusal or failure so to do, appointing a court commissioner for that purpose and directing him to transfer and issue such stock. The judgment is based upon the following findings of fact and conclusions of law:

"Findings of Fact.

"That on June 21, 1903, Joseph Levinson, said bankrupt, and Ray Himelhoch, impleaded as Ray Levinson,

were married in the City of Seattle, King County, Washington, and ever since have been, and now are, husband and wife.

"That at all times since November 20, 1908, the defendant Manhattan Investment Company was and now is a corporation organized and existing under the laws of the State of Washington, with its principal place of business at Seattle, King County.

"That on June 27, 1919, Joseph Levinson was duly adjudicated bankrupt by order on said day entered by the District Court of the United States for the Western District of Washington, Northern Division, sitting at Seattle, in said district, in cause No. 6258 on the records of said court on a voluntary petition filed June 27, 1919, by said bankrupt in said cause No. 6258; that the schedules made and filed by said Joseph Levinson in said cause No. 6258 did not and do not contain an accurate or complete inventory of all his property or such further statements concerning said property as were and are required by the provisions of the Acts of Congress relating to bankruptcy; that said bankruptcy cause was on said June 27, 1919, referred by said court to the Hon. C. R. Hawkins, Referee in Bankruptcy at said Seattle, for further proceedings as provided by law.

"That thereafter and on July 11, 1919, at the first meeting of creditors of said bankrupt, held after due notice, before said Referee in Bankruptcy, William A. Greene, the plaintiff, was appointed Trustee in Bankruptcy of said bankrupt estate and thereupon qualified as such Trustee as required by law and the order of appointment, and entered upon the discharge of his duties as such Trustee, and ever since has been and is now the duly appointed, qualified and acting Trustee of said estate in bankruptcy.

"That verified claims against said estate in bankruptcy were filed in the office of said Referee in said Cause No. 6258, aggregating the sum of $146,152.09, within one year after the entry of the adjudication of bankruptcy, and are now on file therein.

"That no property whatever has come into the possession of the plaintiff except the sum of $265.05, and

that the plaintiff has been able to obtain no further property with which to pay the expenses of administration of the estate in bankruptcy and creditors' claims, or either.

"At the time of the marriage of Joseph Levinson and his wife as above set forth she had no property of her own. Shortly thereafter Samuel Rosenburg, her uncle, and Carrie Himelhoch, her mother, gave to her Lot 2, Columbia Terrace, a Replat of Block 19, Edes & Knight's Addition to Seattle, and the residence thereon, as a wedding present, where the Levinsons have ever since made their home.

"At the time of said marriage Joseph Levinson was the owner of a family liquor business located at 1209 Second Avenue, Seattle, which business he had owned and conducted continuously since prior to the year 1905, and after said marriage he continued to own and conduct the same until the year 1914, when he made an assignment to Charles R. Brown for the benefit of creditors. Thereafter said business was discontinued.

"After the family liquor business at 1209 Second Avenue had been discontinued, Joseph Levinson organized a corporation known as the Levinson Company, which conducted a fancy grocery and delicatessen at the same location during the summer and fall of 1914 and the spring of 1915, when said corporation went into bankruptcy. In 1912 he organized another corporation known as the Levinson Hotel Company, afterwards called the Rector Hotel Company, which operated a hotel and buffet and a family liquor business at the southwest corner of Third Avenue and Cherry Street, Seattle. The hotel corporation failed in the year 1917 and discontinued business. Both the Levinson Company and the Levinson Hotel Company were operated and controlled by Joseph Levinson.

"In the month of September, 1908, the said Joseph Levinson invested $12,000 of the earnings of said family liquor store in a moving picture theatre known as the City Theatre, located at 1206 Second Avenue, in said city. He operated said theatre as an individual until November 20, 1908, when he organized a corporation known as the Alhambra Moving Picture Company,

with a capital stock of $12,000 divided into 120 shares having a par value of $100 each, all of which capital stock was subscribed by said Joseph Levinson and wife and was fully paid by the transfer on November 20, 1908, to said corporation of all the property of said theatre. He kept one share of said capital stock in his own name and caused the remaining 119 shares to be issued in the name of his wife. Said theatre was thereafter operated by Joseph Levinson as manager, under the ownership of said corporation, until February 11, 1911, when he caused said corporation to sell said theatre to A. E. Gabrielson for equities in four parcels of real estate, situated in residence districts of the City of Seattle, three of which were encumbered and have been lost through foreclosure leaving only the fourth parcel known as 1218 Main Street, Seattle, and that thereupon said Levinsons and said corporation went out of the theatre business, and that thereafter and in the month of March, 1911, said Levinsons caused the name of said Alhambra Moving Picture Company to be changed to the Manhattan Investment Company defendant herein, and the capital stock increased to 300 shares of the par value of $100 per share, an increase of 180 shares, which 180 shares Joseph Levinson and his wife caused to be issued to said Carrie Himelhoch and caused the records of said corporation to recite that said Carrie Himelhoch agreed to pay $5,000 for said 180 shares; that on said November 20, 1908, at the time of the organization of said corporation, Joseph Levinson gave said theatre to Ray Levinson his wife; that at the time said theatre was given to Ray Levinson by said Joseph Levinson said Joseph Levinson was perfectly solvent and doing a prosperous business. There is no showing that said Joseph Levinson at said time was indebted to anyone or in any manner whatsoever, but if there were any debts they were for current accounts of said business, which were taken care of in the ordinary course of business.

"December 23, 1905, Joseph Levinson rented in his own name box No. 2449 in the vaults of the Pacific Safety Deposit Company of Seattle. February 14,

1907, he rented in his own name, from said company, in additional box No. 2083. July 6, 1910, he rented in his own name a larger box, No. 2436. He kept all three boxes, visiting them frequently, till April 8, 1912. No one except Joseph Levinson had access to any of these boxes during said entire period, except that Paul Levinson (brother of Joseph Levinson) also had access to box No. 2449 from February 3, 1909, to April 9, 1910, during which period Paul Levinson visited said box No. 2449 fifty-six times. Joseph Levinson visited said boxes many times each month, many times twice a day, and some days three times a day. April 8, 1912, Joseph Levinson surrendered all of said boxes and on the same day re-rented box No. 2436 in the name of the Manhattan Investment Company, to which he and said Ray Levinson both had and have access, but while he has visited same frequently as theretofore she has visited same very infrequently, and has never visited same except in company with Joseph Levinson. June 21, 1917, the Manhattan Investment Company rented a safe deposit box in the vaults of Wm. D. Perkins & Co., Seattle, to which Joseph Levinson and his wife both have had and have access, but while he has visited same frequently, she has seldom visited same, and then always with Joseph Levinson. At the time of the sale of the theatre to said Gabrielson on February 11, 1911, the sum of $100,000 in money was in the vaults of the Pacific Safety Deposit Company in said safe deposit boxes rented by said Joseph Levinson from said company as set forth. Said money was the earnings derived from said Joseph Levinson's liquor business before and after the theatre was established, and such sums as the theatre earned, all of which money was commingled. A short time prior to the increase of capital stock of the Manhattan Investment Company to 300 shares as above set forth, Joseph Levinson and Ray Levinson agreed that, as they were going to make said increase in said capital stock, all money of said corporation should be divided and distributed to them before such additional stock should be authorized and issued, and in furtherance thereof they caused a dividend to be declared distributing to

Ray Levinson 119/120ths of said corporation's cash on hand, and to Joseph Levinson 1/120th thereof. The court finds as a fact that said corporation did not earn or own all of said sum of $100,000 and that it is impossible for the court to find what said corporation did earn or own. Nevertheless said Levinson after said dividend had been declared left the money of said corporation in said boxes, and did nothing to observe such alleged division, but said money was commingled with other moneys as above set forth, and thereafter said Joseph Levinson, as long as he conducted his liquor and other businesses, continued putting in said boxes, other money earned and owned by him, and the court finds as a fact that all of the moneys in said boxes continued to be commingled, and that the moneys alleged to have been divided lost their identity and could not and cannot, be distinguished or segregated.

"The court finds that the whole purpose in increasing the capital stock and changing the name was this: The Alhambra Moving Picture Company is out of business. Joseph Levinson and his wife had now saved up $100,000. Joseph Levinson wants to continue in business; he wants to conserve what he has saved and for that purpose he wants a holding corporation, and he and his wife change the name to the Manhattan Investment Company. But Joseph Levinson has given to his wife the stock in the Alhambra and it will not do to take back any of that stock. It will not look like a gift originally, but that he may be interested in it they increase the capital stock 180 shares. The court finds that the purpose of that was to make the Manhattan Investment Company a holding corporation, just as Joseph Levinson stated to the Dexter Horton Bank that it was a holding corporation. To avoid the appearance of taking back what he had given her they increased the 180 shares with the purpose that he was to have the balance of that stock. They say Mrs. Himelhoch was to pay $5,000. I find that the 180 shares were in Mrs. Himelhoch's name for the purpose and with the understanding that that property was Joseph Levinson's interest in the Manhattan or holding corporation, and that it so stayed there until July,

1914, when Mrs. Himelhoch without consideration assigned 132 shares to Joseph Levinson's brother, Elias Levinson, and transferred the other 48 shares to Mrs. Levinson so as to keep control here in case something might happen that Elias Levinson might not play fair. The court finds that that was Joseph Levinson's stock beyond any question and that this pretended assignment to Mrs. Levinson was to keep the control here still in the Levinsons without putting it in the name of Joseph Levinson. Of the 132 shares caused to be transferred to Elias Levinson, 82 shares were subsequently caused to be transferred to Fannie Rubinovitz, mother-in-law of said Elias Levinson, and living with him, and 50 shares to Charles E. Rice, business partner of Elias Levinson, all of Minneapolis. In August, 1919, the said Fannie Rubinovitz and the said Charles E. Rice assigned and transferred to the defendant Ray Levinson the 82 shares and the 50 shares appearing on the books of said corporation in their names respectively, but in regard thereto the court finds that no consideration was paid by Fannie Rubinovitz or the said Charles E. Rice to the said Elias Levinson, nor was any consideration paid by the said Ray Levinson or the said Joseph Levinson to the said Fannie Rubinovitz or Charles E. Rice for the transfer of said 132 shares of stock to the said Ray Levinson, and the court finds from the evidence that the said Joseph Levinson was at all times subsequent to March, 1911, and is now, the real owner of the said 180 shares of stock of the Manhattan Investment Company after the same was increased in March, 1911, the same being at all times since then and now the community property of himself and the defendant Ray Levinson.

"The court further finds that said Manhattan Investment Company has been at all times since its organization in the year 1908 under the name of the Alhambra Moving Picture Company, and now is, managed exclusively by said Joseph Levinson; that after the alleged division and distribution of the moneys on hand in March, 1911, referred to in paragraph XI hereof, and the change of name of said corporation to

the Manhattan Investment Company, said corporation
if in fact said dividend was paid, had nothing but the
four parcels of real estate taken in payment for the
City Theatre, all of which except said 1218 Main
Street have been lost to the company and the title to
the Levinson home referred to in paragraph VII of
these Findings, and an alleged account of about $3,500
due from Joseph Levinson, which it is claimed was
paid by transferring to the Manhattan Investment
Company certain unimproved real estate.  The cor-
poration still owns said 1218 Main Street, the Levinson
home and the unimproved property transferred to it
by Joseph Levinson, so that it still retains all of the
property it had in March, 1911.  The court finds that
the said Joseph Levinson obtained for said corpora-
tion leases of the Curtis and Ferguson buildings in
Seattle, which leases are now held by the corporation
and have produced and are producing large profits;
that Joseph Levinson in behalf of said corporation
negotiated and made the purchase of the Sorrento
Hotel and the real property on which the same is
located, situated at the northwest corner of Terry
Avenue and Madison Street, Seattle, which purchase
was made for $120,000 in February, 1919, and that said
hotel property has been and is producing large profits
for said corporation; that Joseph Levinson and his
wife Ray Levinson at all times since the organization
of said corporation have been, and now are, the sole
trustees and officers thereof; that said Ray Levinson
has never had, and now has, nothing to do with the
management or control thereof, or its business or
financial affairs, all of which have been and now are
directed and controlled entirely by said Joseph Levin-
son; that said Joseph Levinson is between 50 and 55
years of age, and has been in active business since he
was in his early twenties, and is a business man of
long and varied experience, and exceptional skill and
ability; that said Ray Levinson has no business ability
or skill whatever; that said Manhattan Investment
Company has been managed by said Joseph Levinson
as a close corporation and operated much as a part-
nership, and that its property has increased many

fold, entirely through profits and gains produced by the personal efforts of said Joseph Levinson, and that the business experience, skill and efforts of said Joseph Levinson have contributed, and are now contributing more to the profits and gains of said corporation and to the value of its properties than any contribution made thereto by said Ray Levinson, and that through the business capacity, energies and efforts of said Joseph Levinson it is the owner of the hotel Sorrento property, for which said sum of $120,000 was paid, and the leases upon the Curtis and Ferguson blocks, Seattle, having a value of at least $35,000, and is now possessed of a net annual income of between $27,300 and $28,000. The court finds that it cannot distinguish between the value of the investment in March, 1911, and the present property of the company as represented by its shares of stock and its accumulated profits and surplus, and that by such commingling all the shares of the capital stock of said Manhattan Investment Company are now community property of the defendants Ray Levinson and said Joseph Levinson; that said 299 shares of capital stock are now reasonably worth the sum of $106,000.

"The court further finds that Joseph Levinson and his wife have, at various times, loaned, out of their community funds, large sums of money to said corporation, and that on said June 27, 1919, these loans amounted to at least $90,000 and were evidenced by promissory notes executed by said corporation as payor to Ray Levinson as payee, and that said notes were in the possession of said Ray Levinson on said June 27, 1919; that said $90,000, with the earnings thereof, was on June 27, 1919, and now is the community property of said Levinson and wife.

"The court further finds that, in addition, said Ray Levinson had on June 27, 1919, $25,000, represented in part by certificates of deposit issued by the National Bank of Commerce of Seattle, the First National Bank of Seattle, and the Union National Bank of Seattle, and also $3,000 in Liberty Bonds of the United States, all of which then was and now is community property of said Ray Levinson and Joseph Levinson.

"The court further finds that all of the property said Levinsons had on June 27, 1919, was and now is their community property.

"The court further finds that Joseph Levinson and Ray Levinson, his wife, conspired and colluded to conceal the facts in respect to the earnings of said theatre and said liquor business, and in respect to the property, condition, affairs and capital stock of the defendant Manhattan Investment. Company, and that in furtherance thereof, and with fraudulent intent to conceal their true financial condition, they did secrete and conceal their money in said safe deposit boxes and destroyed, concealed and failed to keep books of account and records from which their true condition might have been and might be ascertained, particularly books of account and records of the family liquor business at 1209 Second Avenue, Seattle, and books of account and records of said City Theatre. The court further finds that such concealment was by them fraudulently made, for the purpose of defrauding their creditors, including those whose claims are on file with said Referee in Bankruptcy; that none of said fraudulent acts were discovered by the plaintiff or by the creditors who have filed claims with the Referee prior to July 23, 1919.

"That the property hereinafter mentioned as being now in the possession of said defendant Ray Levinson is particularly described as follows, to wit: The sum of $90,000, of which the sum of $48,000 approximately is represented by a note or notes signed by the defendant the Manhattan Investment Company and payable to the said Ray Levinson, and $48,000 in money and certificate No. 1 for one share, and certificate No. 3 for 118 shares, and certificate No. 7 for 48 shares, and certificate No. 11 for 132 shares, of the capital stock of the Manhattan Investment Company, and said $25,000 represented by the bank certificates of deposit, and $3,000 in Liberty Bonds above referred to."

"Conclusions of Law.

"That the defendant Ray Levinson has in her possession the sum of $118,000, represented in part by promissory note or notes for about $48,000, executed

by the Manhattan Investment Company in favor of said Ray Levinson, and the sum of $48,000 in money, and by $25,000 represented by bank certificates of deposit, and $3,000 in Liberty Bonds, which sum of $118,000 is the community property of the defendant Ray Levinson and of the bankrupt Joseph Levinson, and for which said sum the plaintiff herein is entitled to judgment against the defendant Ray Levinson, together with interest thereon at the rate of six per cent per annum from June 27, 1919, provided however that in case the said Ray Levinson shall endorse, turn over and deliver to plaintiff herein the said promissory note or notes and said bank certificates of deposit, and said Liberty Bonds, or either or any thereof, the amount collectible thereon shall be credited upon said judgment.

"That 299 shares of the capital stock of the Manhattan Investment Company, evidenced by certificate No. 1 for one share, certificate No. 3 for 118 shares, certificate No. 7 for 48 shares, and certificate No. 11 for 132 shares, are the community property of the defendant Ray Levinson and the bankrupt Joseph Levinson, and the title to said shares of stock vests in the plaintiff herein; and that the plaintiff herein is entitled to a judgment against the defendant Ray Levinson and the defendant Manhattan Investment Company, that the said certificates for 299 shares of said stock be cancelled upon the stock registration books of the defendant Manhattan Investment Company, and that a new certificate in lieu thereof be issued by said Manhattan Investment Company to the plaintiff herein, and that in case said Manhattan Investment Company shall fail or refuse to cancel the certificates now outstanding as aforesaid and issue a new certificate in lieu thereof as above directed, the clerk of this court shall be appointed a commissioner under the direction of said court to cancel said certificates upon the stock registration books of said Manhattan Investment Company and to issue a new certificate for 299 shares to the plaintiff herein.

"That the judgment entered herein shall reserve to the defendants herein, and each of them, all rights

which they may have to object to the sufficiency of any of the claims of creditors filed by such creditors in the United States Court in the matter of the bankruptcy of Joseph Levinson.

"That plaintiff is entitled to recover his costs herein."

The facts are so complicated and involved as to make this opinion necessarily voluminous, and therefore we proceed at once to the consideration of the vital points in the case.

The evidence justifies the finding that Joseph Levinson gave to his wife 119 shares out of a total capitalization of 120 shares of the Alhambra Moving Picture Company, a corporation, which, by change of name, became the Manhattan Investment Company, appellant here; that Levinson, at that time, was perfectly solvent, and that, if he then had any creditors, they have long since been paid in full, and so far as anything passed by that gift and has since been kept separate and distinct from the community estate, no subsequent creditor can now complain. But, after a painstaking and laborious examination of the entire record, we cannot say that the facts justify the finding that, after the sale of the moving picture theatre, there was on hand for division among its stockholders $100,000, as found by the trial court, or $99,000, as appellants state the amount, or anything approaching either sum, either from the profits of the theatre, or from any and all other sources. Appellants start with the assumption that the theatre produced in the first two months of its existence, before the incorporation and before the gift of the stock to the wife, a gross revenue of $9,870.60, based upon penciled slips purporting to give daily receipts but failing to show expenses. They contend that, from November 20, 1908, when the gift was made, to February 11, 1911, when the theatre was sold, it

produced in actual profits substantially the large sum we have mentioned. That a theatre with a seating capacity not exceeding 200, and standing room for 80 or 90 more at the outside, charging an admission of five cents for children and ten cents for adults, giving hourly shows from 11 o'clock a.m. to 11 o'clock p.m. of each day, could produce this sum above expenses in the time mentioned is, notwithstanding the testimony in the case, incredible. We cannot take the space to discuss the evidence upon this point, or to more than suggest that the few slips produced purporting to show daily receipts during this period are so fragmentary and so lacking in continuity as to be of little value. We therefore hold that the theatre did not produce the sum claimed to have been divided, and that there is no evidence sufficient to warrant us in finding that the theatre produced any fixed or definite sum to be divided.

But it seems to be argued that, if the money in question was produced in any other way, such as being abstracted from the business then conducted by Joseph Levinson, present creditors cannot complain. The answer is that the evidence wholly fails to convince us that there was any such sum then in hand. A man doing a prosperous business producing an income of $20,000 a year, with every prospect of success before him, does not withdraw money from his business and secrete it. If this was done at all, and a fund thus produced which went into the vault, it was done, in the main, after the time of the purported division when competition, lessened profits, increased expenses, and the prohibition agitation all pointed to a time when the family liquor business could no longer be made profitable; and if done, being done after the gift of the theatre stock, there is no evidence whatever of a gift

thereof to the wife, and the fund thus created, notwithstanding its being secreted in the wife's possession, was either the separate property of Joseph Levinson or community property, and as such, upon the adjudication of bankruptcy, title to it passed to the trustee and he may recover it.

If, then, there was no fund which passed to the wife as her separate property by reason of the division, what, if anything, passed to her and became her separate property by reason of the gift of the stock? The corporation received from the sale of the motion picture theatre equities in several pieces of real estate. All of these except one were pledged to Charles R. Brown, as trustee for the creditors of the family liquor store, and were lost by subsequent foreclosure of prior mortgages. The remaining piece, so far as we have discovered from the evidence, was never sold, never produced any considerable income or profit to the corporation, and in equity may still belong to the wife as her separate property. The only other then remaining asset of the corporation was the $3,500 owing to it by Joseph Levinson, which was afterwards repaid by the conveyance of some vacant lots, likewise unproductive and, so far as appears, of little or no value to the corporation in its subsequent operation. This also, to the extent of her ownership of the stock, may be held to be the separate property of the wife, in equity.

The corporation's subsequent activities were all of a speculative nature only. Its financial success was in no degree due to the earnings of its capital, but came solely from the daring, good judgment, and keen business ability of Joseph Levinson in securing valuable leasehold interests without the investment of capital, and sub-leasing on terms which produced the financial prosperity of the corporation, and like ventures, except

only its last venture which was financed by profits from the earlier speculations. We do not wish to be understood as in any manner denying the right of a husband to supervise the investment of his wife's separate property, with or without compensation, without thereby affecting its separate nature; but where, as here, there was no investment of capital, and the earnings came solely from the husband's shrewdness and business ability, such earnings cannot become the separate property of either spouse by the use of the single device of the cloak of a corporate name.

We hold, therefore, that appellant Ray Levinson was and is the owner in her separate right of 119 shares of the Manhattan Investment Company, with a proportionate interest in its property acquired through the motion picture theatre sale, and subsequent collection of the debt due it from Joseph Levinson. But we also hold that the profits arising from the speculations of Joseph Levinson became community property.

This makes it necessary to discuss somewhat the increase of the capital stock of the Manhattan Investment Company, and the history of the new shares thus created. Much might be said in support of the trial court's findings to the effect that this stock was issued for, and at all times held for, Joseph Levinson; but without denying that that theory has much to support it, we think the evidence at least supports the view that, when the new certificate for 180 shares was issued to Mrs. Levinson's mother, it was with the understanding that it should be paid for by the transfer to the corporation of Mrs. Levinson's home, which was a wedding gift, and therefore her separate property. Without setting out in detail how this was accomplished, we are satisfied that the evidence supports the conclusion that this was, in effect, done, and since Mrs.

Levinson has since obtained the legal title to this stock, we find it unnecessary now to consider the good faith of the intervening transactions. Hence we hold that Mrs. Levinson is the owner of all of the stock of the corporation except one share.

The record amply supports the finding that all these facts were concealed and that the attempt to defraud was not discovered until well within the statutory period.

According to our view of the evidence as above set forth, the judgment cannot be sustained in form and extent as entered, but must conform to the following:

(1) The profits arising from Joseph Levinson's speculations, being community property, are recoverable; but as against the appellant Ray Levinson, only to the extent she now holds them, and therefore the judgment against her should be only for the sum of $28,000, represented by the cash on hand, certificates of deposit and Liberty Bonds in her possession, to be satisfied *pro tanto* upon a surrender of these securities.

(2) The judgment against the Manhattan Investment Company should not have been for the transfer of its stock, but for the community property of the Levinsons which it held. Thus it should have been required to transfer to the respondent as trustee the leases acquired for it through the speculative operations of Joseph Levinson, and the title to the Sorrento Hotel, subject to the option agreement, which appears to have been made in good faith so far as the optionee is concerned, and which was acquired with community funds arising from the speculations. A money judgment may also be rendered against the corporation for the amount of the net income it has received from these properties since the adjudication. Loans by Mrs. Levinson to the corporation, having been made from what

we now hold to be community funds, need not be considered.

The judgments appealed from are reversed, and the cause remanded with directions to enter judgments carrying into effect the views herein expressed.

MAIN, C. J., PARKER, and BRIDGES, JJ., concur.