## In re LEVINSON.

(District Court, S. D. California, S. D.   August, 1923.)

1. **Bankruptcy** ⊂⊃143(12)—**Trustee entitled to money borrowed on life policies.**

Trustee in bankruptcy was entitled to moneys borrowed by bankrupt on life policies in which wife was beneficiary in the state of Washington, where all of the money that went to pay insurance premiums was property of the bankrupt's estate, and the taking out of the insurance and the filing of the petition in bankruptcy occurred approximately at the same time.

2. **Bankruptcy** ⊂⊃288(1)—**Trustee may take property wherever he finds it.**

Where judgment in state court determined that title and right to possession of property, income, and proceeds vested in trustee in bankruptcy, the trustee had the right to take such property wherever he found it, unless there had intervened claims of innocent persons which

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

require recognition, so that, where the bankrupt's wife held $500 worth of checks representing property of the bankrupt's estate, the fact that the state court had entered a definite money judgment against her in favor of the trustee would not deprive the trustee of the right to follow the funds, and the bankruptcy court would order her to deliver and indorse such checks to the trustee.

In Bankruptcy. In the matter of the estate of Joseph Levinson, bankrupt. Examination of bankrupt in ancillary proceedings. Order entered.

Order affirmed, 296 Fed. 598. See, also, 295 Fed. 144, 146; 296° Fed. 598; 297 Fed. ——.

Norman A. Bailie, of Los Angeles, Cal., and McClure & McClure, of Seattle, Wash., for trustee.

Walter B. Allen, of Seattle, Wash., and William A. Bowen, of Los Angeles, Cal., for bankrupt.

JAMES, District Judge. On the 27th day of June, 1919, Joseph Levinson, upon his voluntary petition, was adjudged a bankrupt in the District Court for the Western District of Washington. William A. Greene was thereafter appointed trustee, in which office he has ever since continued to act. Levinson and his family, the latter consisting of a wife and two children, had for many years resided in the city of Seattle. After the bankruptcy proceedings were commenced, they removed, first to Vancouver, and later to the city of Los Angeles, Cal. For the purpose of causing an examination to be made of the bankrupt and other witnesses, the requisite steps were taken to inaugurate ancillary proceedings here. The local referee in bankruptcy was appointed as a special master to take testimony in the matter, and an examination was made of the bankrupt and his wife. From this examination it was made to appear that there was in the possession of the bankrupt the sum of $6,000, which remained as a part of a $7,500 loan secured by him from a life insurance company. The loan was obtained upon the security of a policy issued on the life of the said bankrupt in the year 1919, in which policy his wife was named as beneficiary. It was stated at the argument, and not disputed, that the amount of the loan represented the full cash surrender value of the policy. The trustee has here sought to procure an order requiring that there be delivered to him the amount of $6,000; also checks for $500 held by the bankrupt's wife. Opposition was made to the granting of the application, the bankrupt contending that any proceeds or loan advances secured on his life insurance policy are exempt from execution under the laws of the state of Washington.

As to the checks held by the wife, it is stated that those checks do not represent property of the bankrupt; that the trustee may have recourse against the wife only, through process issued upon a judgment which he has obtained against her. The proceedings connected with that judgment it will be necessary to describe, because they are involved in the right by which the trustee is making his claim. The action of Greene v. Levinson et al. was brought in the superior court of Washington, and was carried on appeal by the defendants to the Supreme Court of that state, by which court decision was rendered on February

1, 1923. Greene v. Levinson, 123 Wash. 370, 212 Pac. 569, 1 Am. Bankr. Rep. (N. S.) 483. The facts now recited are mainly gathered from the opinion of that court:

That at a date several years prior to 1919 the bankrupt organized a corporation called "Manhattan Investment Company." Practically all of the stock was apparently owned by the wife of the bankrupt. The bankrupt was the active head and manager of the company and made several investments in real estate and leases, which proved very profitable. At the time he filed his petition in bankruptcy the company owned the Sorrento Hotel, in the city of Seattle, and valuable leases which were producing an income in excess of $25,000 per year. This income the wife of the bankrupt, by reason of her claimed ownership of the Manhattan Investment Company, collected and received down to the date of the decision of the Supreme Court of Washington. That decision determined that all of the profits and acquisitions of the Manhattan Investment Company were derived through the industry and business sagacity of the bankrupt alone, and that they were therefore community property, to the possession of which the trustee in bankruptcy was entitled. It was found that at the date of the trial had of the case of Greene v. Levinson, the wife held $28,000 "represented by cash on hand, certificates of deposit, and Liberty bonds in her possession," for which, the Supreme Court said, judgment should be entered, which judgment was to be "satisfied pro tanto upon a surrender of the securities." The decision of the Supreme Court proceeded with the following direction:

"The judgment against the Manhattan Investment Company should not have been for the transfer of its stock, but for the community property of the Levinsons which it held. Thus it should have been required to transfer to the respondent as trustee the leases acquired for it through the speculative operations of Joseph Levinson and the title to the Sorrento Hotel, * * * * which was acquired with community funds arising from the speculations. A money judgment may also be rendered against the corporation for the amount of the net income it has received from these properties since the adjudication. Loans by Mrs. Levinson to the corporation, having been made from what we now hold to be community funds, need not be considered. The judgments appealed from are reversed, and the cause remanded, with directions to enter judgments carrying into effect the views herein expressed."

Following the directions of the Supreme Court, the superior court entered a judgment in which it decreed that the title to the Sorrento Hotel had become vested in the trustee in bankruptcy, as of date June 27, 1919, and had thereafter continued to so remain, and that a certain leasehold interest in real property in King county had, as of like date, become the property of the trustee as a part of the estate of the bankrupt. Conveyances were ordered to be made of the property and the interests before mentioned, and judgment followed as against the wife of the bankrupt for the recovery of the $28,000 with interest, and as against the Manhattan Investment Company for the sum of $68,034.56 "as and for the net income received by said Manhattan Investment Company during the period from June 27, 1919, to March 14, 1922," and providing that nothing in the judgment should be construed "as affecting or limiting any rights which the plaintiff may have in law or

equity to collect from the Manhattan Investment Company any net income received by it from said community property subsequent to March 14, 1922."

In the testimony before the master it was stated by the bankrupt that out of the income received from the Manhattan Investment Company (which under the decision of the Washington courts, was property of the bankrupt's estate) there had been expended in support of the family and litigation growing out of the bankruptcy proceedings in excess of $25,000 per year down to the present year. The evidence fairly showed that $70,000 or more had been collected from the Manhattan Investment Company by the bankrupt's wife, subsequent to the date of the adjudication in bankruptcy, in addition to the $28,000 referred to in the judgment as being represented by money and securities in the hands of the wife, as belonging to the bankrupt's estate. The bankrupt testified that the annual premium on the life insurance was $2,478.20. On being examined as to who paid the premiums and as to where the money came from, he testified as follows:

"Q. Your life insurance premium is $2,478.20? A. Yes. Q. You paid that for the year 1919? A. Yes. Q. For the year 1920? A. Yes. Q. For the year 1921? A. Yes. Q. For the year 1922? A. Yes. Q. For the year 1923? A. Yes. Q. Where did you get the money to pay it? A. My wife paid it. Q. Where did she get the money to pay it? A. She had money—income. Q. Out of the $28,000 or $29,000? A. Of the $28,000 that she had? Q. Yes. A. I don't know where from—it was somewhere. Q. Did she pay it from moneys she got from the Manhattan Investment Company or from moneys out of the $28,000? A. All money was from the Manhattan Investment Company. Q. Then this life insurance premium was paid from money that came from the Manhattan Investment Company since June 27, 1919? A. It might have and maybe not. Q. The life insurance premium was either paid from the $28,000 or from the moneys that came from the Manhattan Investment Company since June 27, 1919? A. Yes, from the dividends, sure."

[1] It may be said that it appears beyond even a reasonable doubt that all of the money which went to pay insurance premiums was property of the bankrupt's estate and was property which the trustee had the right to demand and receive possession of. It cannot be said that the policy of insurance may be saved to the bankrupt under the specious claim of exemption, for the best conclusion that can be made from the testimony is that the taking out of the insurance and the filing of the petition in bankruptcy were approximately of the same time.

[2] Likewise the $500 worth of checks held by Mrs. Levinson represent property of the bankrupt's estate. The claim that, as the superior court of Washington has entered a definite money judgment against the Manhattan Investment Company and Mrs. Levinson, the trustee is deprived of the right to follow the funds, does not recommend itself as furnishing a legal barrier which may be interposed in aid of further fraud on the part of the bankrupt. That the bankrupt was guilty of fraud has been determined by the courts of Washington definitely and finally. One need but read the findings made by the trial judge in the superior court of King county, which are set forth in full in the decision of the Supreme Court referred to, to have the remotest doubt on that subject dispelled. There ought not to be any question, under the decision referred to and the judgment which was entered following it,

that it was there determined that the title and right to possession of the property, income, and proceeds referred to had rested in the trustee in bankruptcy from the date of the adjudication. Anything that remains of that property is still owned by the creditors of Levinson represented by the trustee, and there can be no doubt of the latter's right to take it wherever he finds it, unless there have intervened claims of innocent persons which require recognition. We have nothing of that kind here, for the parties are those who were the active participants in the fraud which has been perpetrated.

It is therefore ordered that Joseph Levinson deliver forthwith to William A. Greene, trustee, the $6,000 in money, being the remainder of the proceeds of the loan of $7,500 obtained by him on the policy of life insurance, and now held by said Levinson. It is further ordered that Ray Levinson, wife of Joseph Levinson, deliver to said trustee the $500 in value of checks purchased with money received as income from the Manhattan Investment Company, subsequent to June 27, 1919, and to indorse the same as payable to said trustee.