## C. W. STIMSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28847.   Promulgated February 2, 1931.

*Harry Ballinger, Esq.*, for the petitioner.
*L. A. Luce, Esq.*, for the respondent.

OPINION.

ARUNDELL: The income in controversy under the first issue is that derived from the operation of the Douglas Block. The petitioner's contention against taxing him on such income as earnings on his separate property is that the title he held to the property in 1924 was not acquired by devise of his grandfather, but by a community purchase made under an option given by Ezra T. Stimson in 1918 when the property was deeded to his uncle in satisfaction of the mortgage.

The facts of record do not support the contention that the property was acquired by purchase rather than devise. On the distribution in October, 1913, of the estate of his grandfather, petitioner and his father desired to acquire title to the Douglas Block and since the appraised value of their shares in the estate was less than such value of the Douglas Block, they gave Ezra T. Stimson, petitioner's uncle and heir of the decedent, a mortgage on the property for the difference. They were unable to operate the building at a profit, and in 1918 the mortgagors deeded the property to the mortgagee with the understanding that petitioner's father should continue to manage the building and in case his efforts were successful they " could have the property back again." That petitioner understood the arrangement to mean that he and his father had been given a right to redeem the property, rather than an option to purchase, is evidenced by the manner in which he recorded the transaction on his books at the close of 1918. Other testimony of petitioner is to the effect that the right given by the mortgagee was one of redemption. No attempt was made to prove the contents of the alleged option to purchase. Neither was anything offered to show that a purchase agreement was entered into in 1920 when title was reacquired. So far as the record discloses the only papers executed at that time affecting the change of ownership were a deed executed by Ezra T. Stimson and a mortgage back in the same sum as the one previously satisfied of record.

The transaction has none of the appearance of one conducted at arm's length between a buyer and a seller. It was simply one to place the petitioner and his father in the same position they were prior to the time the property was deeded to Ezra T. Stimson. Such being our conclusion from the facts, we are unable to agree with the contention being made by petitioner that his position in 1924 as respects the property was no different than it would have been had he never had an interest therein.

Having reached the conclusion we have that the reacquisition of the Douglas Block in 1920 was not a new purchase, it may not be necessary to consider petitioner's further arguments. However, if we are wrong on the first proposition advanced, we do not believe that the record supports petitioner's view that the Douglas Block was acquired with community funds, nor that community funds were used to liquidate the mortgage.

The basis for petitioner's argument that community funds were used in the acquisition of the Douglas Block is a rule of law laid down by the courts in the State of Washington that where the investment of separate property in a business is small, and abnormal profits earned on the investment by able management of the community are intermingled with income which might be attributable to the original investment, the source of the investment will be ignored and all of the investment will be considered as community property. *Salisbury* v. *Meeker*, 152 Wash. 146; *In re Buchanan's Estate*, 89 Wash. 172; 154 Pac. 129; *Jacobs* v. *Hoitt*, 119 Wash. 283; 205 Pac. 414, and *Greene* v. *Levinson*, 123 Wash. 370; 212 Pac. 569. None of the cases called to our attention by petitioner's counsel seem to go as far as we are asked to go in this case and on facts so meager.

It is true that the Ballard Lumber Company made large earnings during the period it was managed by the petitioner. But such evidence falls far short of establishing that the earnings were so clearly the result of his management as to have us accredit all of the earnings to his efforts above a bare legal interest on the money invested. We have not been furnished with any details as to how the Ballard Lumber Company was able to pay such large dividends on its stock. For ought the record shows, the excessive earnings may have been brought about by an increase in the value of timber holdings of the corporation due to causes over which the petitioner had no control whatever. Assuming petitioner's statement of the law to be correct, the facts presented in this proceeding are, in our opinion, entirely inadequate as a basis for applying the principle petitioner urges.

Our conclusion being that the income received by the petitioner from his investment of stock in the Ballard Lumber Company must be treated as separate property, there remains for decision the question of whether its character was lost by the investment of all or part of the fund in real property in Califonia.

*In re Warner's Estate*, 167 Cal. 686; 140 Pac. 583, the decedent resided in Illinois from the time of his marriage until his death. During his married life the decedent sent from Illinois funds which were used to purchase real property in California. In passing upon the question of whether the realty so purchased was separate or community property, the court remarked:

\* \* \* it is well settled that separate personal property, enjoyed under the law of the domicile by one of the spouses at the time it was acquired, is not lost by its investment in real property in another jurisdiction where a different law is in force.

The cases of *In re Burrow's Estate*, 136 Cal. 113; 68 Pac. 488; and *In re Niccolls' Estate*, 164 Cal. 369; 129 Pac. 278, are to the same effect. The same doctrine prevails in the State of Washington. *Brookman* v. *Durkee*, 46 Wash. 578; 90 Pac. 914; *Myers* v. *Vayette*, 146 Wash. 1; 261 Pac. 647.

If the law as laid down in the foregoing cases may be said to have been modified by section 164 of the Civil Code of California, as amended in 1917 and 1923, nevertheless, on authority of *United States* v. *Robbins*, 269 U. S. 315, the income in question would be taxable to petitioner. We find no error in the respondent's determination in this particular.

On the dissolution in 1912 of the Ballard Lumber Company the petitioner acquired by gift from his father the fee to a piece of land in Ballard, a suburb of Seattle, and the unexpired term of a lease covering certain adjoining tideland. The land and lease had a combined value at that time and on March 1, 1913, of $15,000. The land was sold in 1924 for $500. We are here asked to allow as a loss sustained in the sale of the land the sum of $14,500 representing the difference between the aggregate value of the lease and land at the time of their acquisition and selling price of the land. Beyond the fact that the lease was canceled prior to the sale of the land on or about April 10, 1924, the record fails to disclose when the petitioner's interest in the leased property terminated. It may have expired prior to 1924. Even had the lease expired in 1924, evidence of its separate value on the date of acquisition would have been necessary, as a lease is property subject to exhaustion and only the unexhausted value could have been taken as a deduction at the time it terminated. There was ample proof at the hearing of the combined value of the assets, but no effort was made to prove a separate value for each property. Without the value of the land sold there is lacking a basis for computing the loss sustained, if any, and for this reason alone we are compelled to sustain the respondent.

The respondent's position as to the loss suffered on the stock investment is that it was sustained after 1924. The evidence here is to the contrary. During 1922, 1923, and 1924 there were paid to petitioner as liquidating dividends on his stock of the corporation sums amounting to $1,290. In the taxable year, after the corporation had been liquidating its affairs for at least two years, petitioner was advised by the corporation's manager that its affairs had been wound up. We think petitioner was fully justified in relying upon

such advice and is entitled to deduct as a loss in 1924, the sum of $710, representing the difference between the cost of the stock and the amount of liquidating dividends received thereunder by the close of 1924.

From the evidence we are satisfied that all of the claimed deductions, except the item of $132, representing dues paid to the Rainier Club, which we regard as a personal expense, were paid in connection with one or more of the several business enterprises in which petitioner was engaged in 1924. These deductions should be allowed in computing petitioner's taxable income.

*Decision will be entered under Rule 50.*