**In re LEVINSON.**

District Court, W. D. Washington, N. D.
May 3, 1927.

No. 6258.

**1. Appeal and error ⬅1227—Surety on appeal bond is discharged by satisfaction of judgment against principal.**

The surety on an appeal bond, conditioned for payment of any final judgment that may be rendered against the appellant, is obligated only to see that such judgment is paid, and is discharged from liability by satisfaction of the judgment, and where, in ignorance of such satisfaction and on threats of execution, it paid a judgment recovered against it on the bond, it is entitled to recover the payment back, and cannot be deprived of that right by any agreement between the others interested, to which it was not a party.

**2. Bankruptcy ⬅482(1)—That attorney for trustee, whose services were of benefit to estate, was also attorney for creditors, held not to deprive him of right to compensation.**

The fact that an attorney employed by a trustee, whose services were of benefit to the estate, was also attorney for several creditors, or that he was a law partner of the trustee, no objection having been made until after the services were rendered, will not deprive him of the right to fair compensation from the estate.

In Bankruptcy. In the matter of Joseph Levinson, bankrupt. On review of order of referee. Reversed in part.

See, also, 295 F. 144, 146; 297 F. 490; 5 F.(2d) 75.

McClure & McClure, C. L. Henry, and Max Hardman, all of Seattle, Wash., in pro. per. and for trustee.

Jay C. Allen and Walter B. Allen, both of Seattle, Wash., for Allen and National Surety Co.

Bausman, Oldham & Eggerman, of Seattle, Wash., for objecting creditors.

NETERER, District Judge. A voluntary petition in bankruptcy was filed and adjudication made June 27, 1919. The scheduled liabilities were $90,000; assets, $200. William A. Green, an attorney for a creditor whose claim amounted to approximately $29,000, was elected trustee. He employed McClure & McClure as his attorneys, and later C. L. Henry was likewise selected as attorney.

Action was instituted to recover hidden assets. Litigation was had in the state superior and Supreme Courts, and in the United States District Court, the Circuit Court of Appeals, and the Supreme Court of the United States. Examination and litigation was likewise had in Minneapolis, Minn., and Los Angeles, Cal. The total net estate recovered was $165,608.49; claims allowed are $96,701.22. The major portion of this litigation was carried on by McClure & McClure, and practically all of the funds recovered by litigation were recovered, or right established, during the time McClure & McClure were attorneys.

In April, 1925, the firm of McClure & McClure withdrew as attorneys for the trustee. C. L. Henry continued and is still acting as such attorney. C. L. Henry, it also appears, is the law partner of the trustee; but there is no community of interest in the bankruptcy matter as to division of fees.

Upon petitions under oath (General Order IV) of the attorneys for allowance of fees, a time was appointed for hearing to determine the amount of attorney's fees to be paid, and notice given to the creditors of the time and place of hearing and amount of claims made. McClure & McClure filed a claim for $42,500, C. L. Henry filed a claim for $19,000, and Max Hardman a claim for $5,000.

Pending litigation a judgment was entered in favor of the trustee against the Manhattan Investment Company and Joseph Levinson and wife, of which company the bankrupt was president, and he and his wife owned all of the capital stock, and appeal was prosecuted by the Manhattan Investment Company to the state Supreme Court, and to supersede the judgment a bond in the sum of $5,000 was filed by the National Surety Company, which company was in turn indemnified by Walter B. Allen. See Greene v. Levinson, 123 Wash. 370, 212 P. 569. Such proceedings were had on the supersedeas bond that a judgment was entered against the National Surety Company in favor of the trustee, and said judgment was appealed to the Supreme Court, and affirmed August 20, 1926. See Greene v. National Surety Co., 140 Wash. 230, 248 P. 803. On September 22, 1926, the trustee, obligee on said bond, satisfied the judgment in his favor against the Manhattan Investment Company in full on the record of the court in which rendered, and on October 15 following the remittitur from the Supreme Court of the state affirming the judgment on said bond was filed, and on November 8 following the National Surety Company, ignorant of the fact of the satisfaction of the basic judgment, and after the trustee had "threatened to levy execution against this surety, paid the amount of such judgment, $5,648.44."

Allen, the indemnitor of the surety company, moved the referee to direct the repayment of the said sum to the surety company, the benefit of which would flow to him. After full hearing before the referee, all parties being present and participating, including the creditors, objection being made to the claims for attorney's fees as demanded, by the trustee and by creditors, and the motion of Allen resisted by the trustee, the referee found the reasonable value of attorney's services: McClure & McClure, $30,000; Mr. Henry, $12,500; and denied the claim of Max Hardman, on the ground that he had in writing disclaimed any compensation for the services which he would render, being interested as attorney for some large claimant; and denied the motion of Allen to require repayment of the amount of the judgment against the surety company.

Petitions in review are filed by McClure & McClure, by Henry, by Hardman, by the trustee, by some of the creditors, and by Walter B. Allen, who is likewise a creditor in the sum of $486. Allen also moved the referee to require Henry to repay to the trustee the amount which he had received heretofore on account of attorney's fees, and that he be allowed no further sum, on the ground that Henry is a law partner of the trustee, and likewise represents some of the large creditors, who had agreed to compensate him to an agreed per cent. of the amount recovered on their claims.

[1] On hearing before this court, Allen was granted permission to file a petition by the National Surety Company, or an assignment of the judgment to himself as indemnitor, and on the day following the hearing a formal petition was filed by the National Surety Company and Walter B. Allen, praying an order directing the trustee to return the amount paid on the said judgment to the said National Surety Company.

The referee found: "The undisputed testimony touching this transaction is to the effect that Mr. Allen personally indemnified the surety company against loss in order to induce it to furnish the bond on which the judgment in question was based, and that the trustee knew of that fact. It also appeared * * * that, after * * * the bankrupt * * * had been denied his discharge, negotiations were had between the bankrupt and the creditors, or at least some of them, * * * that resulted in an agreement by which the bankrupt was to be released from any future liability to the creditors; * * * that, after said settlement or agreement had been made, the trustee collected the judgment from the National Surety Company. * * *"

The referee also found: "Mr. Green testified that it was understood that said judgment was not to be affected by the settlement. * * *." The referee denied the motion, because the judgment had become an asset of the bankrupt estate, and that neither the trustee nor the creditors could dispose of such asset without the approval or order of the court, and that it was a judgment in favor of the trustee against a stranger to the bankruptcy proceeding.

The judgment was an asset to the bank-

ruptcy estate in only a limited sense. The judgment against the Manhattan Investment Company was the principal debt. The judgment against the National Surety Company was a collateral undertaking to secure the principal debt. The condition of the supersedeas bond is "that the appellant will satisfy and perform the judgment or order appealed from in case it shall be affirmed, and any judgment or order which the Supreme Court may render or make, or order to be rendered or made by the superior court. * * *" See section 1722, Rem. Comp. Stat. of Washington.

The Manhattan Investment Company was judgment debtor and principal on the bond, and the National Surety Company *surety only* for $5,000. The essence of the obligation was that the surety shall be obligated on behalf of the principal debtor, and is no longer obligated when the principal is released. The surety was bound to "satisfy and perform" the judgment, and on such satisfaction by it was entitled to subrogation to all the rights and remedies of the holder of the judgment for its collection. The Court of Appeals in Wehle v. Spellman et al., 75 N. Y. 585, at page 586, 587, said:

"The sureties on the undertaking were bound to pay only the lawful holder of the judgment, and on such payment were entitled to subrogation to all the rights and remedies of the holder of the judgment for its collection."

The bankrupt, Levinson, as president of the Manhattan Investment Company, and the creditors, or the trustee, could not appropriate the credit or property of the surety and convert it into an asset of the bankrupt estate, in addition to the full satisfaction of the judgment against the Manhattan Investment Company. When the judgment against the Manhattan Investment Company was fully satisfied, the obligation of the surety was discharged. See —— Corpus Juris, 1281, and cases cited. If the surety was required to pay the Manhattan Investment Company judgment, then, by operation of law, it was subrogated to the right of the trustee, and could pursue any available remedy against the principal. The release of the principal, or party primarily liable, releases the surety, or party secondarily liable. Hinckley v. Kreitz et al., 58 N. Y. 583. 1 Story's Equity Juris. § 325, says:

"If a creditor does any act injurious to the surety ,or inconsistent with his rights, or if he omits to do any act when required by the surety, which his duty enjoins him to do, and the omission proves injurious to the surety, in all such cases the latter will be discharged."

See, also, Gardner v. Van Norstrand, 13 Wis. 543.

Counsel for the trustee, in his statement and memoranda, says:

"About the time that the remittitur was handed down an arrangement was made with Joseph Levinson, who was the president of the Manhattan Investment Company, whereby certain matters were settled, and in this settlement it was agreed between the creditors, the trustee, and Mr. Levinson, representing the Manhattan Investment Company, that the $68,000 judgment against Ray Levinson and the Manhattan Investment Company should be satisfied of record, and that the trustee should collect the judgment that had been rendered on the supersedeas bond for $5,000 against the Manhattan Investment Company and the National Surety Company."

Levinson, the bankrupt, and the creditors, and the trustee, could not agree together that the judgment against the Manhattan Investment Company and Levinson should be satisfied in settlement of "certain matters," and the judgment against the surety company be collected. To bind the surety company, it should have been a party to the agreement, and when the parties agreed, in the absence of the surety, that the judgment against the Manhattan Investment Company should be satisfied for a consideration agreeable to them, *and was satisfied,* such satisfaction discharged the obligation and condition of the bond, and the surety company was released, and, if compelled to pay, ignorant of such satisfaction, is entitled to repayment; and Allen, having personally indemnified the surety company, which was known to the creditors and the trustee, is so related to the bankruptcy proceeding that, with the surety company, he may invoke the relief which the law affords in this proceeding.

[2] No objection was made at any time to the employment of Mr. Henry by the trustee, either because of a partnership relation or because of his engagement by some of the creditors, in the prosecution of the interests of the bankrupt estate. His employment now appears to be satisfactory to all creditors, except Mr. Allen, whose claim is $486. There are sufficient funds to pay all claims, together with interest to the date of bankruptcy, and the mere fact that Henry

was also attorney for several of the creditors having claims in this proceeding will not operate to deny him a fair compensation for services which inured to the benefit of the estate. See 2 Collier on Bankruptcy (13th Ed.) p. 1354. Nor will the fact that Henry is the law partner of Green, no objection having been made at any time by any of the creditors until all of the services have been rendered. There is no conflict of interests among the creditors.

This is a very unusual case. At the inception of this estate there was no fund for the payment of the attorneys. The fees for their services necessarily were contingent, and the creditors being paid in full, the legal services rendered in the litigation, the burden of which rested upon McClure & McClure, covering a period of approximately six years, while they were acting as attorneys, were efficient and of great value, and should be fairly compensated. Since April, 1925, Mr. Henry has been the sole attorney.

The petition of the National Surety Company and Walter B. Allen will be granted, and an order may be entered requiring the trustee to pay from the funds of the estate the sum paid by the surety company, on its bond. The motion of Allen to disallow the attorney's fee of Mr. Henry will be denied. I think the referee fairly considered all of the evidence and facts with relation to services rendered and performed, and that the fees as found and fixed by him are reasonable. All of the petitions to increase or diminish the fees as fixed will be denied. The petition of Max Hardman will be denied.

Upon the record the court cannot say that it is concerned with the arrangement between some of the creditors and Mr. Henry for special compensation. That is a matter between the creditors and Mr. Henry, with which the court is not concerned at this stage of the proceedings. There is nothing in the record to indicate that the agreement with such creditors, if any, was not in the interest of the estate and for the benefit of all creditors, and not with a view of securing any special or distinct advantage. It is also apparent that the objecting creditor had knowledge of such arrangement, as well as all other creditors, and no objection was made, or the court's attention challenged thereto. No doubt, had that been done, the court would have directed a change. Specially retained attorneys by creditor, or the partner of the trustee, should not as a rule be attorneys for the trustee.