**In re H. Roger LAWLER, individually and doing business as Lawler Cattle Company; Lawler Corporation; Lawler Management Company; Lawler Investment Company; the Lawler Family Trust of April 10, 1968, Debtor.**

Bankruptcy Nos. 3–76–346–G, 3–78–25–G, 3–78–219–G and 3–76–347–G.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

March 14, 1985.

Vernon O. Teofan, Dallas, Tex., and Richard W. Horton, Reno, Nev., for Trustee & Receiver and petitioning creditors.

Craig Goodrum, Jenkins & Gilchrist, Dallas, Tex., for debtor.

## MEMORANDUM OPINION

JOHN C. FORD, Bankruptcy Judge.

This matter comes before the Court by the application of Vernon O. Teofan and Richard W. Horton for compensation as counsel for L.E. Creel, III, as Trustee and Receiver, and as counsel for Petitioning Creditors. After the hearing thereon held April 6, 1984, upon due notice to the debtor, the Internal Revenue Service and other parties in interest, the Court entered its "Order Awarding Compensation and Reimbursement of Expenses to Attorneys for the Petitioning Creditors, the Receiver and Trustee in Straight Bankruptcy, and the Operating Trustee in Chapter XI" (the "Order") on April 16, 1984. The Order awarded the applicants the sum of $1,200,000.00 as attorneys' fee in addition to the sum of $750,865.00 previously awarded as interim compensation, plus $7,582.50 as reimbursement for expenses.

## I.

## FACTUAL BACKGROUND

This case began as an involuntary and essentially "no asset" Chapter VII liquidation under the Bankruptcy Act of 1898, as amended (the "Act"), and has concluded after nine years as a successful Chapter XI arrangement in which over $29 million was made available for the estate, and in which creditors' claims of approximately $13,773,-000 will be satisfied in full (which amount includes ten percent annual interest from petition date on all claims except the claim of the Internal Revenue Service).

This case was commenced on January 9, 1976, by the filing of an involuntary petition against the debtor, H. Roger Lawler ("Lawler"), in the United States District Court in Reno, Nevada, pursuant to Section 59(b) of the Act and former Bankruptcy Rule 104. Prior to the filing, the debtor had caused a series of complicated transfers of his assets among several corporations and family trusts ("The Lawler Family Trusts"), while at the same time being pursued in the courts by creditors. Venue was later transferred to this Court.

When the involuntary petition was brought on for trial in this Court on January 16, 1978, the debtor consented to be adjudicated a bankrupt and L.E. Creel, III was appointed as receiver, and later as trustee. Mr. Teofan and Mr. Horton, who had represented the petitioning creditors in the involuntary proceedings, were appointed as counsel for Mr. Creel as receiver, and later as trustee.

On February 10, 1978, Lawler filed schedules to the petition stating the amount of his debts as "unknown" (these have since been determined to approximate over $13 million). The assets of the debtor were stated to be:

| | |
|---|---|
| a. Real Property | $2,979,720.00 |
| b. Personal Property | 56,136.56 |
| c. Other | Unknown Value |
| Total | $3,035,856.56 |
| Claimed as exempt | $2,998,030.00 |
| Balance in Estate Available to Creditors | $ 37,826.56 |

The non-exempt assets had little or no value. Teofan and Horton as attorneys for the trustee continued with discovery, including obtaining and reviewing audit reports from an independent accounting firm. These efforts revealed a series of transfers of assets which were extremely complicated involving the creation of indebtedness and equity transfers between various related entities.

The filing of the involuntary petition in bankruptcy against Lawler and the recordation in appropriate real estate records of certified copies of the petition, prevented any further effective transfers by him of realty titled in his name pending adjudication. In addition, prior to the adjudication of Lawler, Teofan and Horton had filed a fraudulent transfer complaint in the United States District Court against Lawler Corporation (owned by Lawler) and The Lawler Family Trusts and had recorded notices of *lis pendens* against property that had been

transferred. The filing and prosecution of the district court action and the accompanying notices of *lis pendens* preserved and prevented the further transfer and concealment of millions of dollars of assets pending the adjudication of the debtor in this case.

After adjudication of Lawler, the applicants on behalf of Mr. Creel as receiver filed a voluntary petition in bankruptcy on behalf of Lawler Corporation on January 20, 1978, the individual debtor's estate being the sole shareholder of the corporation. This brought the assets of this corporation within this court's jurisdiction which included a judgment then on appeal which resulted in $326,261.24 being paid to the estate. Additionally, Lawler Corporation had made substantial transfers to the Lawler Corporation Retirement Trust, of which Mr. Lawler was the sole beneficiary. The real estate purchased with funds so transferred valued at $525,000.00 was recovered from the pension plan after considerable litigation and is now held by the Trustee.

Lawler Management Company also became a potential source of assets for the creditors of the debtor. However, an individual who was a former trustee of the Lawler Family Trust was the record owner of all of the shares of stock of Lawler Management Company. Teofan and Horton obtained an assignment of the Lawler Management Company shares to L.E. Creel, III as Trustee in Bankruptcy of H. Roger Lawler, prepared the required stockholders and directors minutes, and on May 15, 1978, prepared and filed a voluntary petition in bankruptcy on behalf of Lawler Management Company. As a result of the filing of the voluntary petition for Lawler Management Company, and the other litigation in which the applicants represented the estate, additional property having a total value of $1,731,858.00 was preserved for the benefit of the estate. In addition Teofan and Horton negotiated a settlement for the payment of two conditional promissory notes to Lawler Management Company, resulting in a recovery of $120,000.00 for that estate.

At this stage, the debtor, H. Roger Lawler, Lawler Corporation and Lawler Management Company were within this Court's jurisdiction by virtue of their separate bankruptcy cases. The Lawler Family Trusts were not in bankruptcy, but the trust assets were subject to the previously mentioned *lis pendens* filed in the district court action. A complaint was thereupon filed by the applicants in the Bankruptcy Court seeking to have The Lawler Family Trusts and the various Lawler corporations declared the alter ego of H. Roger Lawler. The Bankruptcy Court later entered a temporary restraining order to prevent property from being transferred by the trustee of The Lawler Family Trusts.

This Court tried together the issues presented by the complaint to have The Lawler Family Trusts and Lawler Corporations declared the alter ego of the debtor, H. Roger Lawler, and the issues presented by an additional complaint for injunctive relief against The Lawler Family Trusts. On June 18, 1979, this Court entered its order declaring that the trusts and the corporations were from their inception and at all times the same entity as Lawler, which resulted in changing the estate from one of essentially "no assets" to one in which $29 million has been made available.

In addition to the litigation briefly discussed above, Teofan and Horton also obtained injunctions, participated in contested hearings, participated in settlement conferences and negotiated settlement agreements, negotiated and closed numerous sales of real and personal property, collected claims, obtained payment for secured claims and obtained releases of liens and took over the prosecution of lawsuits for the purpose of preserving property which was and which became property of this estate.

The applicants resisted a plan of arrangement proposed by the debtor which provided less than full payment to creditors with interest at 8%. Following the settlement of the substantial claim filed by the Internal Revenue Service, and as a result of action taken by Teofan and Horton, the

debtor agreed to a plan of arrangement to pay creditors in full, in which this Court allowed general unsecured creditors minimum interest at 10% per annum on their claims from January 9, 1976, the day the involuntary petition was filed.

For the foregoing generally described services Teofan and Horton requested the Court to allow their joint application of attorneys' fees in the total amount of $4,000,000 including interim allowance already received, plus reimbursement of expenses in the amount of $7,582.50. The debtor objected to the allowance of the requested fees.

The Court heard from three witnesses whom the Court finds and considers as experts in the area of attorneys' fees in bankruptcy matters. These experts were:

1) David Kline of Oklahoma City, Oklahoma, United States Bankruptcy Judge (retired) and former president of the National Conference of Bankruptcy Judges.

2) Rufus Garrett of Fort Worth, Texas, bankruptcy practitioner since 1952.

3) John Blinn of Fort Worth, Texas, former Bankruptcy Judge, and bankruptcy practitioner.

Each of the experts reviewed the application of Mr. Horton and Mr. Teofan together with the objections of the debtor. In the opinion of Judge Kline, the requested fee of $4,000,000 was reasonable and sustainable. Mr. Garrett and Mr. Blinn both were of the opinion that a total fee of $1,400,000 was appropriate. There was no disagreement among the experts that this was an unusual case, with novel legal questions presented and with exceptional results obtained for creditors.

In making its decision, the Court has considered the entire record in this matter as well as the application for compensation and objection thereto. The Court finds that the time logs presented by the applicants with their application describe the services rendered by the applicants in sufficient detail, and together with the record of this case, adequately inform the Court as to the extent and quality of the applicants' services.

## II

### THE STANDARDS

Former Bankruptcy Rule 219 requires that the Court allow reasonable compensation. The starting point for any consideration of the amount of attorneys' fees to be awarded in a bankruptcy case is *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), as made applicable in bankruptcy cases by *In the Matter of First Colonial Corporation of America*, 544 F.2d 1291 (5th Cir.1977), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). The Fifth Circuit in *Johnson* set forth twelve factors that this Court must consider in making such an award. These factors were recently reconfirmed (in a non-bankruptcy context) in *Blum v. Stenson*, —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (award of attorneys' fees under the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988). See also *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

The *Johnson* factors (which, as applied to this matter, are more fully discussed in the Appendix hereto) are as follows:

1. The time and labor required.

2. The novelty and difficulty of the questions.

3. The skill requisite to perform the legal services properly.

4. The preclusion of other employment by the attorney due to acceptance of the case.

5. The customary fee.

6. Whether the fee is fixed or contingent.

7. Time limitations imposed by the client or the circumstances.

8. The amount involved and the results obtained.

9. The experience, reputation, and ability of the attorneys.

10. The undesirability of the case.

11. The nature and length of the professional relationship with the client.

12. Awards in similar cases.

The *Johnson* factors are, of course, contextual; that is, they are to be applied in the appropriate manner to the particular facts and circumstances of each case. *Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1092–93 (5th Cir.1982). They are also very similar to the standards to be applied under Section 330 of the Bankruptcy Code of 1978 (the "Code") in the award of attorneys' fees. See Butana, "Establishing Attorneys' Fees under the New Bankruptcy Code" 37 *Bus. Lawyer* 77, 79 (1981). Considering the mandate of the Fifth Circuit in *First Colonial* that the bankruptcy judge must briefly explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors listed in *Johnson* affected his decision, 544 F.2d at 1300, an Appendix has been included to detail the application of the *Johnson* factors.

Mr. Teofan and Mr. Horton have asked for $4,000,000 in attorneys' fees. Based upon the *Johnson* and *First Colonial* factors, the Court concludes that a total award to the applicants jointly of $1,950,865.00 is appropriate, based upon the facts set forth herein and in the Appendix, and for the reasons set forth below.

### III.

### CONCLUSIONS

In considering the award of fees to these applicants, the Court has combined the *Johnson* factors in what it considers as a reasonable result. The first temptation is to come to a mechanical solution of establishing an hourly rate and then applying that rate to the hours devoted to the case. But this method borders on being arbitrary in all but routine cases, which this case is not. See *In the Matter of Aminex Corp.,* 15 B.R. 356, 361 (Bankr.S.D.N.Y.1981). Even the *Johnson* opinion limits consideration of the number of hours as being "a necessary ingredient to be considered". 488 F.2d at 717. This Court, therefore,

follows *Johnson* in that regard. As Mr. Justice Powell stated in *Blum v. Stenson, supra,* "there may be circumstances in which the basic standard of reasonable rates multiplied by reasonably expanded hours results in a fee that is either unreasonably low or unreasonably high". —— U.S. at ——, 104 S.Ct. at 1541, 79 L.Ed.2d at 901.

The *Johnson* standards have been embraced by many other courts, sometimes under what has been called the "lodestar" theory for awards of attorneys' fees. See, *e.g., Furtado v. Bishop,* 635 F.2d 915 (1st Cir.1980); *Southwestern Media, Inc. v. Rau,* 708 F.2d 419 (9th Cir.1983). The lodestar approach was not a rejection of *Johnson,* but a special application of the *Johnson* criteria. *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 583 n. 15 (5th Cir.1980); see also, *In re Casco Bay Lines, Inc.,* 25 B.R. 747, 755 (B.A.P. 1st Cir.1982). "The lodestar fee-setting inquiry begins with the calculation of the lodestar: the number of hours reasonably expended on the case multiplied by a reasonable hourly rate." *Id.* "The lodestar is adjusted up or down to reflect factors, such as the contingent nature of success in the lawsuit or the quality of legal representation, which have not already been taken into account in computing the 'lodestar' and which are shown to warrant the adjustment by the party proposing it." *Miles v. Sampson,* 675 F.2d 5, 8 (1st Cir.1982). See also *In re Bolton Hall Nursing Home,* 40 B.R. 657 (Bankr.D.Mass.1984). Included in these additional factors are the "contingent nature of success and the delay in receipt of payment." *In re Casco Bay Lines, Inc., supra,* at 756.

It is under the heading "quality of representation" that a bankruptcy court should particularly consider the results of the attorney's participation in the bankruptcy proceeding, and the benefit to the estate to see if circumstances warrant adjustment of the lodestar figure. Where an attorney's services have produced particularly exceptional benefits for the estate, an upward adjustment of

the lodestar may be warranted to compensate for an hourly rate that turned out to be overly conservative. Similarly, if a high-priced attorney performs in a competent but undistinguished manner a decrease in the hourly rate would be warranted.

*Id.* See also *In re Wilson Foods Corporation,* 40 B.R. 118 (Bankr.W.D.Okla.1984). The lodestar application of the *Johnson* factors has been specifically adopted in this circuit. *Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1092–93 (5th Cir.1982):

> Of the twelve *Johnson* factors, Judge Wisdom stated [in *Copper Liquors, Inc. v. Adolph Coors Co.,* 624 F.2d 575 (5th Cir.1980)] that recent Fifth Circuit decisions suggested that four of the factors deserve "special heed": (1) the time and labor involved, (5) the customary fee, (8) the amount involved and the results obtained, and (9) the experience, reputation and ability of counsel". *Id.* at 583. These factors should be considered in the following framework:
>
> (1) Ascertain the nature and extent of the services supplied by the attorney;
>
> (2) Value the services according to the customary fee and quality of the legal work; and
>
> (3) Adjust the compensation on the basis of the other *Johnson* factors that may be of significance in the particular case.

684 F.2d at 1092.

The Court finds that Teofan and Horton, and other billable personnel in their offices, devoted legal work time of approximately 5,700 hours to this case, none of it duplicative. At the hourly rates (shown in the Appendix) which the Court also finds to be reasonable, a fee of $843,401.75 would be chargeable and is the Court's initial estimate of a reasonable fee. In addition, the applicants have estimated that an additional 500 hours would be expended by them from their application until confirmation of the plan. The hourly amount therefore must be adjusted because of the other elements of this case. The Court must recognize the results obtained by the efforts of these attorneys by an appropriate fee award, while keeping the spirit of economy within its consideration as well. Thus, any award in this case must fall "at the lower end of the spectrum of reasonableness". *In the Matter of First Colonial Corporation of America,* 544 F.2d 1291, 1299 (5th Cir.1977).

*In the Matter of Aminex Corp.,* 15 B.R. 356 (Bankr.S.D.N.Y.1981) involved a successful Chapter XI arrangement with provision for payment of 100% of creditor's claims. The court granted the attorneys' request for $2,390,287 in fees plus an additional $200,000 premium fee for results obtained. In finding this award proper, the court noted:

> Clearly Bankruptcy Rule 218 even in the instant situation, mandates that the bankruptcy court must vigilantly control fees and expenses in order to ensure that allowances therefor be fixed "at the lower end of the spectrum of reasonableness." But this standard does not preclude, as objectants appear to maintain, the award of a premium. If under the circumstances of a particular case the award of compensation, even if justifiably enhanced by a premium, falls within the dictates of reasonableness, the "economical spirit" of the Act has been served.
>
> We have set forth earlier, in this opinion, the extraordinary efforts and remarkable results achieved by the applicants. If we were under the circumstances present here, to deny a premium, we would impermissibly be confusing "economical" with "parsimonious" in total derogation of the spirit of the Bankruptcy Act.

15 B.R. at 362–364 (footnotes omitted).

The customary fee in a case such as this must be increased because of the application of the *Johnson* factors, including the contingency nature of the fee, and the results obtained, and the contingent and undesirable nature of the case. Enhancement of fee awards has been specifically approved under the *Johnson* criteria where

exceptional results have been obtained. See, *Rose Pass Mines, Inc. v. Howard,* 615 F.2d 1088 (5th Cir.1980) (award of individual acting both as receiver and trustee "doubled", attorneys' fees enhanced by approximately 10 percent), citing *Wolf v. Frank,* 555 F.2d 1213 (5th Cir.1977) (33% attorneys' fee enhanced in stockholders derivative action). At the hearing, one of the Court's experts, Judge Kline, testified: "I dare say there is not another one like it, certainly that I've ever been exposed to. At one time I did a lot of case digesting in reading all attorney fees, but this is a remarkable case".

The facts of this case require the consideration of the contingency factor. The use of an appropriate contingent fee as an ingredient (among other considerations required) is especially appropriate where, as here, the case began as a "no asset" case and progressed to a "full payout case" directly due to the efforts of the applicants. Had the applicants not succeeded as they did, there may not have been any funds available to pay attorney fees.

If the bankruptcy label is removed from this case and it is viewed as a very complicated and substantial case of business litigation, a similarity to other cases begins to emerge, the similarity being in the "salvage" nature of this case. In the case of *In re Osofsky,* 50 F.2d 925 (S.D.N.Y.1931), a fee of 33–⅓% of the recovery was allowed, the Court saying:

> In bankruptcy cases, however, there seems to me to be another element which has to be considered. That is the fact that in bankruptcy very often futile quests for assets have to be made. Many times, however much ingenuity and time attorneys may expend, they may not be able to get anything for the estate by their efforts. It is then a question, as in salvage at sea, of no cure, no pay.
>
> When the efforts of attorneys cause a material increase in the bankruptcy estate, or, as here, create it, they should be well rewarded; otherwise there will not be any incentive to attorneys to put forth their best efforts in cases which appear unpromising.

50 F.2d at 927.

A similar situation was presented in *In re Levinson* 19 F.2d 253 (W.D.Wash.1927) where the court stated: "This is a very unusual case. At the inception of this estate there was no fund for the payment of the attorneys. The fees for their services necessarily were contingent, and the creditors being paid in full, the legal services rendered in the litigation, the burden of which rested upon McClure & McClure, covering a period of approximately six years, while they were acting as attorneys, were efficient and of great value, and should be fairly compensated." 19 F.2d at 256.

The fee for the applicants in this case was substantially contingent and the Court so finds. The customary contingent fee in this district, and in many other locations, is one-third of the amount recovered. The amount recovered in this case is approximately $29 million of which approximately $13.7 million will go to creditors. Because of the spirit of economy in bankruptcy cases emphasized by *First Colonial,* see 544 F.2d at 1299, the Court believes one-third of either amount would be too high in this case, but nonetheless must recognize that any fee to be awarded was contingent upon funds being brought into the estate.

As Circuit Judge Wisdom noted in *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575 (5th Cir.1980):

> Before arriving at a final award, at least two other subjective factors must be considered. The first is the contingent nature of success. The second factor is the extent to which any exceptionally positive or negative quality of an attorney's work mandates increasing or decreasing the lodestar. A fact to be considered in making this adjustment is the amount recovered in damages as compared to the defendants' potential liability.

624 F.2d at 583 n. 15.

In this case, the amount brought into the estate by these Applicants replaces Judge

Wisdom's consideration of the "amount recovered in damages." Lawler's "potential liability" must be taken as the amount of claims allowed, approximately $13.7 million. By making over $29 million available to the estate, the applicants have thus far exceeded the amount necessary to pay these claims. There has been no suggestion that Mr. Teofan and Mr. Horton could have done more than they did.

The case was also undesirable because of litigation, actual and threatened, by Lawler against Teofan and Horton, and because of the personal attacks made upon them in the course of this case. This element cannot be adequately reflected in the hours charged to this case. The case was stressful for all, the Court included, and this element must be considered in the compensation.

The court has carefully reviewed the time records submitted with the fee application and has taken due notice of the previous award of interim fees. The fees allowed herein are not duplicative or compensation for non-legal services. *See, In the Matter of First Colonial Corporation of America*, 544 F.2d 1291, 1299 (5th Cir. 1977).

For all of the reasons mentioned in this Opinion and in the Appendix, the Court does find that a fee of $1,200,000.00 in addition to the fee of $750,865.00 earlier allowed, for a total fee of $1,950,865.00 is a reasonable fee in this case, is a fee that is in accord with prevailing market rates in this district while at the "lower end of the spectrum of reasonableness", *id.*, and shall be allowed and paid to Teofan and Horton and to their law firms for such division between them as they have agreed to or shall agree to.

### APPENDIX

The Court makes the following findings with respect to the criteria set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974):

1. *The Time and Labor Required.* The applicants have submitted detailed time records reflecting the time devoted to this matter. These records together with the files of this Court in this case are sufficient both in detail and extent to inform the Court as to the nature and extent of these services, and show the time to have been efficiently spent without duplication of effort. The applicants' combined time is:

| | |
|---|---|
| Teofan's Office | 3,377.75 |
| Horton's Office | 2,315.40 |
| TOTAL | 5,693.15 |

Applicants estimated an additional 500 hours would be required to confirm the plan, for a grand total of 6,193.15 hours. The case commenced January 9, 1976, with the filing of the involuntary petition and will hopefully be finally completed in early 1985, and will thus span over nine years.

2. *The Novelty and Difficulty of the Questions.* At the hearing on the application, Judge Kline, one of the Court's experts, testified that the case was unbelievably complex. Mr. Garrett, another of the Court's experts, said the novelty and difficulty of the questions involved in the case would have a very high rating. Judge Gandy, who heard the majority of the matters in this case, observed in one of his orders that this case was one of the most complex pending in this Court. These observations are certainly correct as shown by a review of what Teofan and Horton uncovered and proved in this case.

3. *The Skill Requisite to Perform the Legal Services Properly.* It is obvious that the highest of legal skills in the field of debtor-creditor relations was required to recover the assets for this estate and to perform the other services rendered by the applicants, including obtaining a minimum interest rate of 10% for creditors' claims. The Court considers that the highest of legal skills were required by this case and were displayed by Teofan and Horton.

4. *The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case.* This factor is more important in time consuming cases as the one at bar. Obviously, by spending approximately 6,000 hours on this case, other legal work

was precluded. This would be especially true for experienced practitioners like the applicants.

5. *The Customary Fee.* This element requires consideration of fees customarily paid in similar cases yet this case is unique in its nature and scope. If a "customary fee" is thought to be one based on hourly rates, a fee in this case would be computed as follows based upon the hours devoted by the applicants and attorneys in their respective offices:

| Person | Hours | Reasonable Rate | Total |
|---|---|---|---|
| Teofan | 2,433.50 | $175.00 | $425,862.50 |
| Guysi | 577.50 | 120.00 | 69,300.00 |
| McElreath | 276.00 | 125.00 | 34,500.00 |
| Sartin | 37.25 | 105.00 | 3,911.25 |
| Petrozelka | 22.50 | 90.00 | 1,980.00 |
| Cockerell | 13.50 | 105.00 | 1,391.25 |
| Gutman | 5.00 | 120.00 | 600.00 |
| Fuller | 4.75 | 90.00 | 427.50 |
| Weisbrod | 4.00 | 105.00 | 420.00 |
| Ungerman | 3.25 | 165.00 | 536.25 |
| Sanchez | 1.00 | 70.00 | 70.00 |
| Horton | 1,461.45 | 175.00 | 255,753.75 |
| Shaffer | 13.50 | 75.00 | 1,012.50 |
| Good | 8.60 | 75.00 | 645.00 |
| Pickering | 62.00 | 75.00 | 4,650.00 |
| Douthit | 769.85 | 55.00 | 42,341.75 |
| TOTAL | 5,693.65 | | $843,401.75 |

If a "customary fee" is thought to be a contingent fee, a fee in this case could be from 20% to 40% of the recovery, such being the spread testified to by the witnesses. Such a fee would be:

a. If computed on assets recovered of $29,000,000:

    (1) 20%        $ 5,800,000
    (2) 40%        $10,600,000

b. If computed upon the amount to be paid to creditors of approximately $13,000,-000:

    (1) 20%        $2,600,000
    (2) 40%        $5,200,000

This action commenced as a no asset case. Had Teofan and Horton not succeeded in their efforts after Lawler's adjudication, they would have received nothing as there would have been no assets in the estate. The contingency nature of the compensation, more fully discussed in the Opinion, must be given appropriate weight.

6. *Whether the Fee is Fixed or Contingent.* As noted under factor 5 above, the fee to be awarded in this case was, at the outset, necessarily contingent. It is obvious that no fee of substance would be paid from the estate except from assets brought into the estate. Having taken the risk of having no fee paid from the estate, Teofan and Horton should be awarded a fee consistent with the risk as the contingent nature of the fee is an important element to be considered in this case in the award of a fee.

7. *Time Limitations Imposed by the Client or the Circumstances.* Many of the actions taken by Teofan and Horton and briefly described herein were taken under time constraints to prevent further transfers of assets by Lawler, the Lawler Family Trust and the Lawler corporations. Teofan and Horton had the task of keeping all of the many suits and proceedings moving to a final conclusion. A review of the pleadings, of the appeals and of the many hearings makes obvious that Teofan and Horton were faced with the need to rapidly prepare and present their positions. The Court takes particular note of this aspect of the case and the need to give it weight in awarding a fee.

8. *The Amount Involved and the Results Obtained.* The experts who testified at the hearing on the fee application were impressed by this aspect of the case. Even counsel for the debtor admitted the results were exceptional. Teofan and Horton started with what amounted to a no asset case and brought cash and assets into the estate of a value of approximately $29 million. The amount involved may be viewed as that which was recovered—$29 million— or it may be viewed as that amount necessary to pay all claims and costs of administration which, dependant upon the fee here awarded, would be in the area of $15 million. Even viewed from what Lawler will have left when everyone is paid, the case is

very substantial, as Lawler will likely have almost $8 million.

Lawler placed a value of $22,544,000.00 on the cash and property recovered by Teofan and Horton and still held by the trustee. The trustee has used or disbursed with proper authority approximately $6,500,000 out of other funds recovered by Teofan and Horton.

The total estate thus recovered is:

| | |
|---|---|
| Now on hand | $22,544,000 |
| Cash spent | 6,500,000 |
| Total recovered | $29,044,000 |

Claims to be paid appear to be:

| | |
|---|---|
| Internal Revenue Service | $ 5,000,000 |
| Other priority claims | 140,000 |
| General Unsecured | 4,600,000 |
| Interest payable to creditors | 4,000,000 |
| Total payable to creditors | $13,740,000 |

Lawler will be left with an estate of:

| | |
|---|---|
| On hand | $22,544,000 |
| Less paid to creditors | 13,740,000 |
| . Net | $8,804,000 |
| Lawler's Net Homestead | 3,000,000 |
| | $11,804,000 |
| Less unpaid costs of administration | ? . |
| Net to Lawler | $ ? |

9. *The Experience, Reputation, and Ability of the Attorneys.* Both Horton and Teofan are highly regarded practitioners. The record is fully supportive of this fact. This Court has had the opportunity to observe the ability of the applicants and confirm this conclusion. Mr. Horton is the managing partner of the Reno office of his Nevada law firm with over 40 attorneys, with 34 years of experience in the legal profession, much of that devoted to civil trial practice. Mr. Teofan is well known to this Court as his practice is concentrated in this district. The debtor has stipulated that Mr. Teofan is an expert attorney in the bankruptcy field, and the Court agrees.

10. *The "Undesirability" of the Case.* The fact that this case involved an uphill effort beginning with practically no assets made the case from the beginning undesir-able and it continued so with much of the debtor's defense consisting of attacks upon the ethics and characters of applicants.

11. *The Nature and Length of the Professional Relationship with the Client.* This factor has little relationship to fee consideration in this case, and will therefore not be considered.

12. *Awards in Similar Cases.* This case cannot be adequately compared to other bankruptcy cases because of its unique features. Of course, it is a bankruptcy case, but that does not limit the inquiry to just other bankruptcy cases. Within the bankruptcy field itself, awards of attorneys' fees are not comparable because of the wide variety of cases. If comparison has to be made, then the Court must consider another similar bankruptcy case and the Court knows of none. However, as more fully set forth in the text of the opinion, premium awards have been allowed in exceptionally successful cases. The facts of this case place it in that exceptional category and are supportive of an enhanced fee.