In re Daisy M. **PRUDHOMME** (Debtor).

**Bankruptcy No. 91BK–81053–A11.**

United States Bankruptcy Court,
W.D. Louisiana,
Alexandria Division.

Nov. 24, 1992.

See also 152 B.R. 91.

**82**

Robert L. Royer, Alexandria, LA, Richard P. Alexander, Gregory T. House, John F. Arens, Eldered N. Bell, Jr., Joshua Joy Dara, Sr., and Terry A. Zelinski, Fayetteville, AK, for debtors.

Kenneth D. McCoy, Natchitoches, LA, Jeff Bohm and Deborah L. Livingston, Austin, TX, for Farm Credit Bank.

Frances H. Strange, Shreveport, LA, for the U.S. Trustee.

Brett Brunson, Natchitoches, LA, for the Plan Trustee.

## REASONS FOR DECISION

HENLEY A. HUNTER, Bankruptcy Judge.

This matter is before the Court on the First and Final Application for Compensation by Mr. Robert L. Royer as Attorney for the Debtor. Objections to the application were filed by the Farm Credit Bank of Texas and by the United States Trustee. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 22.01 incorporated into Local Bankruptcy Rule 1.2. No party at interest has sought to withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. Pursuant to these Reasons, the objections are overruled in part and sustained in part and compensation and expenses are fixed and approved as specified herein.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### A. Background

Daisy Prudhomme filed a voluntary petition under Chapter 11 on July 30, 1991. This case is closely related to the case of John and Kathleen Batten who filed a voluntary petition under Chapter 11 on October 15, 1991. Ultimately, plans were confirmed in both cases filed on behalf of the Farm Credit Bank of Texas ("FCB"). This

Court has filed extensive written opinions in both cases. On January 31, 1992, written reasons were assigned relating to the Motion of the Farm Credit Bank for Relief from the Automatic Stay in the Batten case. On February 10, 1992, written reasons were assigned denying approval of FCB's Disclosure Statement in the Prudhomme case. On June 10, 1992, written reasons were assigned in the Batten case denying approval of the Debtors' Disclosure Statement. On October 8, 1992, written reasons were assigned in both cases concerning a discovery matter. The application presently before the Court covers the period of July 26, 1991, through May 22, 1992. Compensation is requested in the amount of $4,358.00 and expenses in the amount of $642.00. The application reflects the payment of a pre-petition retainer in the amount of $5000.00 which included a $500.00 filing fee by Riverside Farms Partnership.[1]

### B. FCB's Objection

FCB's Objection to the application is based on a deposition taken in connection with motions pending against "Debtor's lead counsel, the Arens Law Firm."[2] In that deposition, the applicant, Mr. Royer, is stated to have acknowledged that:

"A. He was retained only to handle filing of pleadings and preliminary motions 'that didn't amount to much,' and to consult with and help the Arens Law Firm, but not to handle the 'critical motions.'

B. He did not personally prepare any of the pleadings in the bankruptcy case.

C. He was not involved in planning the overall strategy of the case.

D. He was not involved in disclosure statement or plan development on behalf of the Debtor.

E. He did not always completely review all pleadings prepared by the Arens Law Firm prior to filing the same.

F. He did not perform an investigation of the factual or legal basis for any of the allegations of the pleadings he filed, even those he signed and with respect to which he had reservations.

G. The degree of his involvement herein lessened as the case progressed, to the extent that he ceased being present for the entirety of all hearings or for some hearings at all.

H. He did not discuss the contents of FCB's proposed plan of reorganization with the Debtor prior to the hearing on confirmation.

I. He was not even aware of certain significant provisions contained in FCB's Texas' confirmed plan of reorganization until long after confirmation had occurred."

FCB Objection filed Nov. 10, 1992.

Further, the objection asserts that counsel was contacted as early as 1988, and that this contact was not disclosed; that applicant failed to require debtor to file the Supplemental Schedule required by Local Rule 4.0; that applicants' efforts did not confer any benefit to the estate beyond his attendance at the Section 341(a) meeting; and that attorney time is being charged for items that could have been provided by non-professional personnel.[3]

Further, the objection makes certain observations relating to the relevant factors for consideration under *In the Matter of First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir.1977) as addressed in the application. Objector particularly notes that

---

**1.** The Batten case is filed in the name of John T. Batten, Jr., d/b/a Riverside Farms Partnership. This partnership is composed of the Battens and Miss Prudhomme, however, it has *not* filed a petition in bankruptcy.

**2.** Several motions were filed in both the Batten and Prudhomme cases relating to the Arens Law Firm and various members or former members thereof. A hearing was held on October 29, 1992. The record remains open for the filing of additional exhibits. A briefing schedule has been established. *See* Minute Entry dated October 29, 1992.

**3.** Objector asserts that had the Supplemental Schedule been filed and answered completely, a payment of $50,000.00 to the Arens Law Firm would have been disclosed. This payment relates to the Motions regarding the Arens Firm. *See fn. 2, supra.*

it "... does not question that Applicant is a skilled bankruptcy attorney, but only whether he had occasion to and did exercise those skills in this case." The objector also questions the necessity of expending "44.4 hours of attorney time for the services actually rendered."

### C. The United States Trustee's Objection

This objection asserts that the application seeks a total compensation exceeding the amount for which it was actually noticed. It further asserts that it is not possible to determine if there is a duplication of services performed by the Arens Firm and that it is premature to analyze this issue.[4]

This objector also asserts that certain services could have been performed by non-professional personnel, particularly those performed on the dates of July 30, 1991, August 13, 1991, September 20, 1991, November 27, 1991, and January 9, 1992. The United States Trustee maintains that such services constitute overhead. The objector likewise questions the ultimate benefit to the estate.

### D. Applicable Law

■ It is well-settled that the applicant bears the burden of proof in a fee application. *Matter of U.S. Gulf Corp.*, 639 F.2d 1197 (5th Cir.1981); *Matter of Evangeline Refining Co.*, 890 F.2d 1312 (5th Cir.1989).

In making a determination on attorney fees, consideration by the Court of the factors announced by the Fifth Circuit in *Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977); and *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974), is required. These requirements are incorporated into the Local

Rules. *See Local Bankruptcy Rules*, § 2.13.

■ An attorney is not a guarantor of the confirmation of a plan as a pre-requisite to the entitlement to compensation. *In re James Contracting Group, Inc.*, 120 B.R. 868 (Bkrtcy.N.D.Ohio 1990).

### E. Summary of the Evidence

Mr. Royer testified that he generally confines his practice to bankruptcy matters and has actively participated in over 100 Chapter 11 cases. He had some knowledge of and contact with Mr. John Batten prior to the filing of this case. He had correspondence in his files from Mr. Batten as early as 1988. He recalled requesting copies of Miss Prudhomme's Chapter 12 plan which was previously dismissed.[5] Mr. Royer had some thoughts that a plan might have been filed on her behalf. In 1989, there was further contact with Mr. Batten relating to a possible settlement with a lender. That contact resulted from a letter "out of the blue" from the attorney for the creditor. There were also discussions relating to reducing the Battens overall debt load, their earlier Chapter 12 case having been dismissed since the debt limits were exceeded. *See Reasons for Decision*, January 31, 1992, Batten.

Prior to the filing of the instant case, Mr. Royer was contacted by Mr. Batten on a Friday afternoon requesting that the former serve as "local counsel." Early the next week, Mr. Royer was again contacted by Mr. Batten. Discussions took place between Mr. Royer and Mr. Eldered N. Bell, with the Arens Law Firm of Fayetteville, Arkansas. Mr. Royer was impressed by this contact with Mr. Bell. Mr. Batten assured him that the firm was a "world

---

**4.** The Arens Firm has filed no application for compensation or expenses, thus making this comparison impossible. In the instant case, however, the plan provides that "All Administrative Claims of professional persons must be approved by the Court within six months of the Effective Date, or else the claim or claims will be deemed denied." Confirmed Plan, page 5, Article II, § 2.1. The effective date of the plan is defined as the fifteenth day following the Confirmation date, which is defined as the date

the order of confirmation is docketed. *Id.*, Article I, §§ 1.15 and 1.10. The Order of Confirmation was signed on May 13, 1992, and was docketed the same date. Any application by the Arens Firm would appear to be time-barred as of late November, 1992.

**5.** Daisy Prudhomme's Chapter 12 case, No. 87BK–01446–A12, was dismissed on August 25, 1988.

class law firm" specializing in "farmers' rights."

Mr. Royer received and filed the petition without consulting with Miss Prudhomme personally. Shortly after filing same, Mr. Royer attempted to discuss the case with the debtor, who referred him to Mr. Batten.

Mr. Royer and Mr. Bell agreed that the former's role in the case was to be a limited one. He was to sign pleadings if necessary and give the Arens Firm an "avenue into court." He would handle "non-critical" motions; not motions to convert, dismiss, lift stay, etc. Nor was Mr. Royer to participate in disclosure statements and plans. This agreement with Bell was not reduced to writing, nor was it communicated to Miss Prudhomme. He acknowledged that the application to employ himself as counsel did not contain any designation of his limited role.

Mr. Royer testified that he personally did not prepare the schedules but may have inserted the words "none" on a blank portion. *See* Debtor's Schedule A–3 filed August 14, 1991. He frequently filed pleadings for the Arens Firm and perceived that they were often received "at the last minute." He did not prepare the debtor's disclosure statement and plan; nor did he prepare the schedules listing any partnership assets as exempt.[6] He felt he had no role in the overall case strategy or direction.

Mr. Royer testified that since his deposition was taken (which was not offered as an exhibit), he has reviewed the record and noted that he did not sign as many pleadings as he initially recalled. He testified that, after reviewing the record, he had personally signed the initial petition, the motion for extension of the exclusivity period, a motion for continuance of a valuation hearing, and Mr. John Arens' response to the Motion to Disgorge.

He testified that in his opinion, a motion to continue did not require any investigation. He was aware that the motion was filed on the eve of a hearing. He was not optimistic of its chances.

Inquired if he read FCB's pleadings, Mr. Royer responded that he attempted to read the service copies of pleadings when he received them. He denied any knowledge of the merits of a lawsuit filed by the Battens and Miss Prudhomme against the Farm Credit Bank, which suit was dismissed in accordance with the terms of the confirmed plans in these cases.

Mr. Royer testified that his degree of involvement lessened as the case progressed. He actively participated in the hearing on the motion for relief from the stay. *See Reasons for Decision*, January 31, 1991, Batten. Later in the case, if he had not been consulted regarding a particular hearing, he would not attend the same to avoid a duplication of services. Mr. House, a member of the Arens Firm, seldom conferred with Mr. Royer. House played a significant role in the Disclosure Statement hearings in the Prudhomme case and in the confirmation of FCB's plan.[7] He acknowledged that he could not necessarily remember all the names of the attorneys from the Arens Firm who participated in the case, stating that his memory for names was not the best.

On occasion, Mr. Royer would receive pleadings by "fax" and copy them to make a "hard copy." He would then add a signature line, sign same, and file the document. He acknowledged that he described himself as a "gofer" in his deposition testimony, and recalled one of FCB's attorneys calling him a "water boy."

Questioned about the benefit to the estate, Mr. Royer opined that these farm debtors produced a crop and that the business entities continued to operate. Royer was not familiar with the amount of adequate protection payments actually made

---

6. While not discussed extensively in this Court's prior written Reasons, FCB has heretofore maintained that the Debtors improperly claimed exemptions on farm equipment which actually belonged to the partnership and took inconsistent positions relating to the ownership of such assets. *See e.g.,* FCB's Disclosure Statement filed December 24, 1991, page 16.

7. *See Reasons for Decision,* June 10, 1992, Batten, page 6, at which the Court noted Mr. House's "repeated assurances."

to FCB under this Court's adequate protection order dated October 24, 1991. He was aware of a crop loan obtained for the 1991 crop with Court permission which would be repaid. He (as is the Court) appeared to be unaware of any crop loan made to Riverside Farms Partnership without Court approval.

Mr. Royer testified that in future cases, he would be much more careful "than to get on board when he has no control" and would be more specific in his application to be employed.

Questioned closely about the time items and services which objectors assert might have been performed by non-professional personnel, Mr. Royer testified that he and another attorney own an office building. They have one, shared, secretary. Mr. Royer frequently makes his own copies of documents for filing in bankruptcy cases due to the proximity of the copier to his office and the availability of the secretary. Further, he has no "runner" and makes frequent trips for filings to the office of the Clerk of the Bankruptcy Court to ensure that pleadings are filed.

Mr. Royer explained certain entries in the application, particularly the following:

| Date | Work Performed | Time |
|---|---|---|
| **1991** | | |
| | * * * * | |
| 7/30 | Office visit w/Mr. Batten, et ux, phone calls w/Mr. Bell | 1.70 |
| 7/30 | Review Chapter 11 package, make necessary copies, prepare for filing | 1.70 |
| 7/30 | Office visit w/Mr. Batten, et ux Re: Sheriff Sale | 1.20 |
| | * * * * | |
| 8/13 | Review schedules, Statement of Affairs, Income and Expenses | 1.80 |
| 8/13 | Preparation of statement and schedules for filing | 1.00 |
| | * * * * | |
| 9/20 | Make copies, serve opposing attorney and filing | 1.30 |
| | * * * * | |
| 11/27 | Phone call w/E. Bell Re: motion to consolidate; phone call w/K. McCoy Re: Plan | .30 |
| 11/27 | Receive and review motion to extend exclusive time within which to file plan; file and fax to Ed Bell | 1.10 |
| 11/27 | Phone call w/E. Bell Re: Motion | .30 |
| **1992** | | |
| 1/9 | Letter from T. Zelinski Re: Disclosure Statement and response to Motion for Relief from stay | .20 |
| 1/9 | Review Disclosure Statement and Plan, amendments, copy and file | 1.20 |

Mr. Royer testified that on July 11, he made 52 copies, a task that took ²/₁₀ of an hour. On July 30, additional copies were made. He could not elaborate on the "package" preparation time, since the petition came "signed." On August 13 he probably spent ⁷/₁₀ of an hour on copies. He was unable to explain the entry on September 20, 1991, relating to service, having testified that the Arens Firm generally "made service."

He generally would compute ²/₁₀–³/₁₀ hour to the filing task since his office is four blocks or less from the office of the Clerk. On November 27, he made 31 copies and "faxed" same to Mr. Bell. On January 9, 1992, he made 42 copies; a task which took approximately ½ hour.[8]

---

**8.** Mr. Royer's testimony regarding the number of copies made is generally consistent with the expense summary. *See Application,* page 5.

### F. The Role of "Local Counsel"

At the outset, as Mr. Royer himself concedes, it was unwise to enroll as counsel without disclosing in the record the limited role that Counsel perceived he was to play in this case. He further concedes the application to be employed was prepared in the normal fashion required by Local Bankruptcy Rule 4.0. An order to Counsel for Debtor in Possession imposes on Counsel explicit duties. Further, the Local Rules expressly require that Supplemental Schedules be filed to accompany such applications. Mr. Royer could not verify that the supplemental schedules were filed. In fact, they were not.[9]

This Court does not expressly condone the fact that Mr. Royer did not confer with Miss Prudhomme personally prior to the filing of the instant case. This is certainly not the intent of either the letter or the spirit of the Order Authorizing Retention of Attorney used in this District which requires:

> "IT IS FURTHER ORDERED that the said attorney be and he is hereby charged with the following special duties and responsibilities which he is hereby ordered to perform:
>
> 1. He shall offer advise to the debtor in possession ..., as applicable, regarding the operation of the business of the debtor in possession and the debtor in possessions's responsibility to comply with the orders of this Court, including the Order to Debtor in Possession, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Guide to Practice, and other applicable law...."

*Local Bankruptcy Rules.*

Nevertheless, on these facts, Counsel's somewhat belated effort to comply with these requirements was met with a rebuff/referral to Mr. Batten. Although Mr. Batten did not hold a power of attorney from Miss Prudhomme, he nevertheless as-sumed a prominent role in her case from its inception, well before the filing of a separate proceeding on behalf of himself and Mrs. Batten. In fact, Mr. Batten was the principal witness in all hearings before this Court in these companion cases as well as the original cases which were dismissed. Miss Prudhomme has deferred to Mr. Batten's knowledge of the farming operations regarding her case on more than one occasion before this Court.

On the enrollment issues, some discussion of the relationship of the Local District Court Rules to Bankruptcy matters is necessary. Under Local Bankruptcy Rule 1.2, the Local District Court Rules apply to bankruptcy cases except when there is a conflict or the proceedings are conducted before a district judge. Rule 4.0 sets forth express requirements for the appointment of counsel for Chapter 11 debtors. Rule 7.1 of the Local Bankruptcy Rules provides that the Local District Court Rules govern admission to practice.

The members of the Arens Firm were not authorized to practice in Louisiana. In order to appear before this Court, they were required to comply with Uniform District Court Rule 20.06. Association of local counsel is required by the Rule, which also imposes the requirement that local counsel sign pleadings. However, under Rule 20.-07, in a civil matter, which would certainly encompass bankruptcy proceedings, the joinder of local co-counsel may be waived by the Court if the party would suffer "hardship" and "the obligations and duties of counsel in the particular litigation would be fulfilled." Since the requirements of counsel to debtors-in-possession are so express under the Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules, this writer suggests that a case could be made for out-of-state counsel to be appointed without joinder of local counsel to avoid the "hardship" of additional costs. But, while this is consis-

---

**9.** This Court declines to speculate what such schedules might show had they been filed. FCB opines that they would have disclosed a payment to the Arens Law Firm in the amount of $50,000.00. *See fn. 3, supra.* In view of this debtor's reticence at a hearing in this Court to divulge the names of persons to whom she had made a transfer of funds, at least a portion of which, was apparently intended as a religious contribution, it would be sheer conjecture that FCB might have learned of the Arens payment at an earlier time.

tent with the desire to avoid duplicative services in bankruptcy matters, it is not consistent with the original purpose of the local counsel rule. The purpose of that rule is to ensure that the Court has a member of its bar and under its general control to be accountable in the event of abuse of process or other infraction occurs. *Sanders v. Russell,* 401 F.2d 241 (5th Cir. 1968).

In the instant case, notwithstanding the applicant's concession that more specificity relating to the limited roll he intended to play was needed in the application process, no harm has been demonstrated resulting from any ambiguity in counsel's designation. FCB's objection itself virtually concedes Mr. Royer's limited role. This Court was aware during the hearings that Mr. Royer was appearing as local counsel, notwithstanding the pleadings. The testimony of Mr. Batten at the hearings on the motions relating to the Arens Firm clearly indicates that he looked to the Arens Firm for representation of both himself, his wife, and Miss Prudhomme in the bankruptcy matters.

### G. Was there a Failure to Disclose?

This Court does not ascribe any significance to FCB's contention that Mr. Royer's disclosure of prior contacts with the debtor is insufficient. In his application for employment, Mr. Royer attached a statement of his disinterestedness. The contacts prior to the filing of the application in 1988 and 1989 appear to have been isolated at best. The situation here is much less serious than that confronted by this Court in *Contraband Ventures, a General Partnership, Case No. 87BK–51783, Janis M. Pauley v. Contraband Ventures, Adversary No.* 89Ap–8104, W.D. of La., September 26, 1990. There, counsel failed to disclose the representation of a partner in

state court litigation against the other partner. Total disgorgement was ordered. The decision was affirmed by the District Court on appeal. *See Karl E. Bollert v. Contraband Ventures, et al, Memorandum Ruling,* Civil Action No. 91–0454.[10]

This Court has heretofore rejected an overly rigid, mechanical approach to the Disclosure requirements. *See Swisco, Inc., Case No. 90–80015, W.D.La., Aug. 7, 1991.* There, counsel failed to disclose a serious creditor-debtor relationship between Swisco and its principals, Mr. and Mrs. Hebert, who were represented by the same attorney as Swisco. Further, the attorney for debtor-in-possession made a totally unwarranted misinterpretation of this Court's rules and an order approving the payment of compensation to insiders.

Here, the isolated contacts between Mr. Batten and Mr. Royer pre-application and filing pale to the *de minimis* level of nondisclosure; if indeed, any relevant fact was not disclosed.

### H. Was there a Duty to Investigate and to Attend all Hearings?

FCB's objection asserts that Mr. Royer did not conduct an independent investigation of all pleadings he signed, nor those he did not sign, but merely filed. The thrust of FCB's argument here appears to be that sanctions may lie. This Court is uncertain that any sanction beyond the Court's control over applications for compensation is presently poised for a determination. FCB has cited no authority for sanctions against an attorney for filing a document he did not sign. Federal Rule of Bankruptcy Procedure 9011 governs only signed documents. If, here, FCB is relying on that rule to sanction debtor's local counsel, its reliance on same is misplaced. It is not the first instance in this case in which FCB has

**10.** Nor does the rule announced by the Fifth Circuit in *In re W.F. Development Corp.,* 905 F.2d 883, (5th Cir.1990), *cert denied, sub nom. W.F. Development Corp. v. Office of the U.S. Trustee,* — U.S. ——, 111 S.Ct. 1311, 113 L.Ed.2d 245 (1991) appear to be violated here. There, the Fifth Circuit imposed a *per se* disqualification rule when an attorney represents both limited and general partners in a bankrupt-

cy. Mr. Royer does not purport to represent the partnership Riverside Farms Partnership, which is described as a "General Partnership" composed of Daisy M. Prudhomme, John T. Batten, Jr. and Riverside Plantation, Inc., each equal partners. Statement of Financial Affairs for Debtors Engaged in Business, filed August 14, 1991, page 11. At *fn. 1, supra,* it is noted the partnership is not in bankruptcy.

sought to misuse that rule. *See Reasons for Decision,* October 8, 1992. This Court's review of the record reflects that Mr. Royer's signature to pleadings appears on only a few documents. Absent any suggestion from FCB that any particular document Mr. Royer *signed* is violative of Rule 9011, this Court declines to speculate further.

In the final analysis, the objectors, particularly FCB, wish to impose an impossible burden on the applicant, and, to a limited extent, the Court. The applicant is supposed to perform all duties imposed on him by the order of appointment, yet not duplicate the services of principal counsel. The Court is supposed to determine if any duplication exists, when no application for compensation has been filed by lead counsel. Counsel is to investigate all pleadings he did not sign; yet not charge for such services, since duplication may occur. Counsel is further to be required to attend all hearings, even those in which his participation is apparently not requested by lead counsel, yet, again, avoid duplicative efforts. The Court is to deprive itself of the benefit of involvement by local counsel in the case by not compensating same; thus depriving the Court of the benefit of counsel under its control. Counsel is to make unilateral decisions not to file pleadings which he did not sign but is required to investigate without compensation. This "Catch 22" situation is untenable.

Having rejected these contentions, these Reasons now address the adequacy of the application itself.

### I. Analysis of the Application

■ The services detailed begin on July 26, 1991, with the phone calls with Mr. Batten. On July 30, 1991, counsel received and filed the petition. On July 30, 1991, counsel reviewed the Chapter 11 "package" and prepared the same for filing. Notwithstanding a lack of specificity in Mr. Royer's testimony regarding this entry, this case was filed less than 24 hours prior to a scheduled Sheriff Sale. Motion for Relief from Stay by FCB, filed August 19, 1991. Applications failing to reach an "ideal level of completeness" may be sufficient. *Matter of Lawler,* 807 F.2d 1207, 1212 (5th Cir.1987). With such urgency, the attorney's personal oversight of the filing process differentiates this filing from another, less urgent filing which could be accomplished by non-professional personnel. The review of orders for status conferences and orders to the debtor in possession, the review of the initial debtor conference package from the United States Trustee, calls with the Arens Firm, review of the schedules and statements on matters relating to the 341 meeting and a 2004 examination are clearly compensable. In short, the entries from July 26, 1991, through September 18, 1991, are compensable.

■ While Mr. Royer could not explain the entry for 1.30 hours on September 20, 1991, *supra,* at the hearing, the record reflects that he actually signed a certificate of service annexed to an amended matrix and schedules. However, there is no evidence of any urgency relating to this filing or the service of same that justify its payment. It would appear to be an act that could have been performed by non-professional personnel and will be disallowed in its entirety.

■ The entries beginning September 23, 1991, through the first entry for January 28, 1992, are largely unobjectionable. During this period, Mr. Royer was apparently being consulted by the members of the Arens Firm and playing an active role in the case. His attendance at the hearing on relief from the stay on September 25, 1991, cannot be said to be particularly duplicative of the work of Mr. Bell, who attended the hearing from the Arens Firm. Attendance of local counsel protects an interest of the Court. *See Sanders, supra.* An adequate protection order ensued from that hearing. Mr. Royer appears to have played a substantial role in the preparation of the order for signing by the Court. Entries of 9/26, 9/27, 10/10, 10/11, 10/21, 10/22, and 10/23 pertain to that order. The order for adequate protection was signed on October 24, 1991. This Court does not find it surprising that Mr. Royer could not testify as to the precise number

of payments made pursuant to that order. The Court is extremely doubtful that after an interval of one year, any Chapter 11 attorney could recall such information. He nevertheless played a significant part in the process. On the last date Mr. Royer and Mr. McCoy, Counsel to FCB, attended a conference with the Court. Counsel for FCB might have done well to refresh his own memory regarding Mr. Royer's role regarding that order prior to the hearing.

In November, 1991, Mr. Royer assisted in the filing of motions to consolidate and extend the exclusivity period. *See* entries 11/25 through 1/3. Both motions were unsuccessful. In late 1991, FCB filed a plan and disclosure statement. FCB objected to exemptions claimed by the debtor. A valuation hearing was noticed.

On January 28, 1992, debtor sought a continuance of the valuation hearing. Mr. Royer testified he "walked" this motion through filing, despite the fact he was pessimistic about its success. The hearing was set for the following day. Local Bankruptcy Rule 2.1(J) provides that: "Motions for continuance ordinarily will not be considered unless filed in writing no less than three (3) working days prior to the hearing date." The rule does not proscribe later filing. In fact, the rule is honored more in the breach than in its observance.

Here, Counsel would arguably have been derelict in his duty by not filing the motion. This Court concurs with Mr. Royer's suggestion that no investigation of the motion was required when he did not sign it.

■ The only questionable entries for this period are those of 11/27/91 and 1/9/92. The former is reduced to .75 hours to eliminate the clerical time spent in what Mr. Royer described as copying and "faxing" the documents. The January 9, 1992, entry is reduced to .70 hours to eliminate one-half hour copying and filing time. There is no evidence that this filing was urgent.

Beginning in January, 1992, Mr. Royer's services concern objections to exemptions, review of orders admitting other attorneys to practice, disclosure statements, and orders lifting the stay. These are matters that are frequently litigated in Chapter 11 cases. A holding that counsel may not be compensated for same would have a chilling effect on a debtors' ability to obtain representation.

During much of this period, there was enormous uncertainty in the Fifth Circuit concerning the issues of cramdown in Chapter 11 plans. In its original opinion, 948 F.2d 134 (5th Cir.1991), the Fifth Circuit held that there was no new value exception to the absolute priority rule. That holding, issued November 19, 1991, had a significant impact on this case and on the related case of the Battens. In its *Reasons for Decision*, January 31, 1992, Batten, this Court noted the effect of that decision on these related cases.

On February 27, 1992, the Fifth Circuit withdrew those portions of the original *Greystone* opinion relating to the new value exception. In summary, for an extended period, there was great uncertainty concerning the requirements for plan confirmations in this circuit. That uncertainty overshadowed this case. To hold that counsel should not be compensated for debtor representation during a period of such uncertainty would only compound the chilling effect discussed *supra*. As noted on page 5, counsel is not a guarantor of a confirmed plan.

■ After adjustments for entries that are disallowed or reduced, applicant's allowable compensable time totals 42.25 hours. Counsel's rate is $125.00 per hour. Neither the United States Trustee nor FCB object to the rate nor to the expenses sought in the total amount of $642.00. The allowable compensation totals $5281.25 plus expenses of $642.00 for a combined total of $5923.25. However, as the United States Trustee's objection correctly notes, relying on Federal Rule of Bankruptcy Procedure 2002(c)(2), the Notice of the application requests a total of $5000.00. Allowable compensation is therefore fixed at $4358.00 ($5000.00 less $642.00) plus expenses of $642.00.

## CONCLUSION

For the reasons previously set forth herein, the objections are sustained in part and overruled in part. Compensation and expenses of Mr. Robert Royer are approved and fixed at $4358.00 and $642.00 respectively for a total of $5000.00. A separate, conforming order will enter.